## TURNER ET AL. *vs.* COLE.

1. When no provision is made for the wife by her husband's will, she may claim the provision which the law makes for her, without dissenting from the will as prescribed by the act of 1812 (Clay's Digest 172 § 3).
2. Adultery on the part of the wife is no bar to her claim for a distributive share in her husband's estate under the act of 1812 (*Ib.* 173 § 4).

3. If the widow fails to present her claim for her distributive share of her deceased husband's estate to his personal representatives until after the estate has been finally settled by due course of law, her remedy against him and his sureties is gone, and she must follow the assets in the hands of the heir or distributee.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. 'J. W. LESESNE.

THIS bill was filed by Sophia Cole, the appellee, against John E. Turner and Hannah, his wife, Charles A. Deshon, Samuel Myers, J. C. Dubose and Henry Myers. It alleges, substantially, that the complainant was the lawful wife of John Cole, late of Mobile, deceased, having been married to him in England in 1816 ; that they there lived together as man and wife some twelve or fifteen years, when said John formed an illicit connection with said Hannah Turner, then Hannah Cottrell ; that said John then deserted complainant, and, in company with said Hannah, came to Mobile, and there settled ; that said Cole was a butcher by occupation, and in the course of time, while so living in Mobile, amassed a large fortune, consisting of real and personal property ; that he departed this life in 1846, leaving a last will and testament, in which no provision whatever is made for complainant ; that said Hannah, who, as complainant is informed, assumed the name of Hannah Cole, after complainant's desertion by her said husband, and pretended to be the lawful wife of said Cole, is made his principal legatee ; that said Hannah, and defendants Charles Deshon and Samuel Myers, were appointed executors of said will ; that the said Hannah and Deshon qualified as executor and executrix, with defendants Dubose and Henry Myers as their sureties on their official bond, and have taken possession of all the property, both real and personal, belonging to said estate ; that complainant gave them notice, soon after her said husband's death, of her rights as his wife, and claimed as such whatever the law would allow her in said estate ; that her claims were entirely disregarded by them, and that said Hannah has converted all the assets of said estate to her own use ; that said Cole left few or no debts, and some trifling legacies to persons residing in England, all of which have

been paid; that a large estate was left, after the payment of said debts and legacies, which went into the hands of the said Hannah, who still retains the same; that the said Hannah and Deshon deny complainant's rights as widow and relict of said Cole, and said Hannah (who has since intermarried with said John E. Turner), claims to be his widow herself, and also claims the entire property devised to her by said will to the exclusion of complainant; that the personal property received by said executor and executrix amounted to $15,000; that, according to the statutes of this State, complainant's distributive share of her said husband's estate is one half of the personal property.

The prayer of the bill is, that said executors and their sureties be held liable to complainant for her distributive share of her said husband's estate; that they may be required to exhibit a true inventory and appraisement of the personal property of said estate; that an account may be taken of the same; and for general relief.

John E. Turner answers the bill, disclaiming all interest in the suit. Said Hannah Turner and Deshon file their separate answers, in which they set forth the condition of their testator's estate, showing that the personal property thereof amounts to about $5000 : they profess ignorance of the fact of complainant's alleged marriage with said John Cole, and require proof of that fact; they admit that they have heard such a rumor, and allege that, if such is the fact, complainant eloped from the bed and board of said Cole, in 1828 or 1829, with one Dawty, with whom she lived in adultery several years until his death; admit that complainant and said Cole, at one time, lived together as man and wife, but require proof of their actual marriage; admit that a child was born during their co-habitation, and allege that it died in infancy. Said Hannah alleges that she was lawfully married to said Cole, or, at all events, believed herself to be lawfully married to him; that she did not know, at the time of her marriage with him, that complainant was his wife, if such was the fact; that complainant, by her adulterous intercourse with said Dawty and others since her elopement from said Cole, has forfeited all claim to any part of his estate; she admits the execution of said will by said Cole, that the

personal property of said estate is in her hands, and that she claims it as her own ; denies having had any knowledge of complainant or her claims during the progress of the administration of said estate, but supposed her long since dead; denies that she has converted said property to her own use, and states that the whole of it, except one female slave and her four children, is now in her possession. Deshon's answer denies complainant's marriage with Cole, and admits all the allegations of the bill not contradicted as above stated.

The evidence establishes the following facts : That complainant and said Cole were married in 1816 or 1817, and lived together as man and wife for several years, during which time complainant gave birth to a female child, which died in infancy ; that an illicit intercourse grew up, several years after their marriage, between said Cole and one Ann Partridge ; that complainant and said Cole often quarreled on that subject ; that complainant, in 1828 or 1829, eloped from her said husband's bed and board, with one Dawty, carrying with them all, or nearly all, of her husband's effects ; that she lived in adultery with said Dawty until his death, and afterwards intermarried with one Williams ; that she and said Williams lived together as man and wife for several years, and then separated, and there is no proof that said Williams is now dead ; that she had two children by said Dawty while living in adultery with him ; that said Hannah, about the time she was coming to this country with said Cole, was informed that he was married, but said Cole then called her his wife, or. said that he intended to marry her ; that said Cole and Hannah came to Mobile in 1833 as man and wife, and lived together as such from that time until his death, in 1846 ; that his estate was finally settled, after the lapse of eighteen months from the grant of letters testamentary, before the Orphans' Court of Mobile, without complainant's claim being presented to the executors ; and there is no proof that either the executor or executrix knew of the existence of her claim.

The Chancellor decreed in favor of complainant, holding that she was entitled to one half of the personal estate of said Cole as his widow. To reverse this decree an appeal is

taken, and it is here assigned for error, first, that the Chancellor granted the relief sought by the bill ; second, that the bill ought to have been dismissed ; third, that the decree is erroneous, in granting any relief, and in decreeing to complainant any portion of the personal estate of said testator ; fourth, that the court erred in decreeing against Deshon, and against the sureties on the bond of the executor and executrix.

E. S. DARGAN and JOHN J. TAYLOR, for appellants :

At common law, a husband could give away his whole personal estate, and thereby defeat the claim of his widow and next of kin.—2 Black. Com. 492 ; 1 Will, Ex. pp. 1 to 4. By our statute, the widow may dissent from the will, and claim her distributive share.—Toulmin's Digest, 258, 259 ; Clay's Digest, 172. But if she does not dissent within the time, and according to the mode, pointed out in the statute, she can claim nothing in opposition to the will.—8 Leigh 400, 409 ; 2 Dana 343; ib. 665 ; 7 Iredell 72 ; 6 ib. 273. The cases of Green v. Green, 7 Porter 19, McLeod and Wife v. McDonald and Wife, 6 Ala. 236, Hilliard v. Binford and Wife, 10 ib. 977, and Martin v. Martin, 22 Ala. 86, are not in conflict with this proposition ; for, in each one of those cases, the application was for dower in real estate, which is a common-law right, independent of statute ; but the distributive share of the personalty, in opposition to the will, is a right arising exclusively from the statute, and the complainant must show that she has done every thing that will entitle her to claim under the statute : her failure to dissent from the will, according to the statute, leaves her rights as they stood at common law, which would be cut off by her husband's will.

If it be considered that her claim to a share of the personal estate is part of the dower, then, we insist, complainant has forfeited it by her elopement and adultery. Adultery was made a forfeiture of dower by the act of Westminister 2, Edward I, which was passed long before the emigration of our ancestors from England, and therefore forms a part of our common law.—1 Kent's Com. 473 ; 5 Peters 223 ; 8 Pick. 314 to 317 ; 4 Paige 198 ; 4 Rawle 333 ; Parke on Dower, 223.

When an estate has been distributed by an executor accord-

ing to the will, without knowledge of a claim paramount to the title of the legatees, he cannot be held liable to such claim, but the party must pursue his rights against the legatees.—Sawyer v. Birchmore, 15 En. Ch. R. 392 ; David v. Frowd, 7 Con. En. Ch. R. 4. Admit that Mrs. Hannah Cole, when she married Cole in 1832, knew that complainant was his wife, and yet never heard of her from that time until the year 1850 ; and suppose that she had stated to the Orphans' Court that Cole had a wife, who abandoned him in 1827 and lived in adultery with another man, and that she had not been heard from since 1832 or 1833. The law, in such case, would have presumed her death.—1 Bouv. Law Dic. 418 ; 1 Phil Ev. 159 ; 24 Wend. 221 ; 4 Wharton's R. 173. The final settlement of the estate, therefore, relieves the executors from all accountability, and the complainant can go against Mrs. Turner only as having possession of the property. The act of 1843, which requires that the administrator shall state the names of all the distributees, cannot charge him, when he had no notice whatever of the existence of such person.

PERCY WALKER, *contra :*

1. Admitting adultery on the part of the defendant in error, she is nevertheless entitled to her distributive share of her husband's estate. Our statutes have not changed the common law on the subject of dower ; and by the common law adultery on the part of the wife was no bar to dower ; a divorce *a mensa et thoro*, at common law, did not bar dower. The common law was changed, in England, by the statute of Westminister 2 ; but this statute has never been adopted in this State, and it forms no part of our common law.—Fitzpatrick v. Edgar, 5 Ala. 499 ; 7 Sm. & Mar. 161 ; 16 S. & R. 13 ; 2 Binney 1 ; 1 Dall. (Penn.) 57 ; 4 *ib.* 168. But even if this statute was in force here, our statute of 1812 abrogates the rule contended for, and gives the distributive share without making it dependent on the wife's virtue.—1 Lomax's Dig. 109 ; 2 Brock. 256 ; 4 Comstock's R. 95. Distribution is regulated by the law of the domicil of the deceased.—2 S. & M. 617 ; 1 Mason 381 ; 2 Lomax on Ex., pp. 222, 223, and note.

2. As no provision was made for complainant by her husband's will, no dissent on her part was necessary to entitle her

to a distributive share of his estate. An examination of the statute of 1812 shows this to be the proper construction of it ; and the construction is sustained by several decisions of this court, and of other courts upon similar statutes.—Green v. Green, 7 Porter 19 ; Hilliard and Wife v. Binford, 10 Ala. 977 ; Martin v. Martin, 22 Ala. 86 ; Craven v. Craven, 2 Dev. Eq. R. 338 ; Cummings v. Daniel and Wife, 9 Dana 361 ; 14 Vermont R. 120.

3. Complainant's claim, if upon the assets, is primarily chargeable against the portion of the residuary legatee, although she may have acted in good faith, and been ignorant of com- plainant's rights until asserted by the bill. The sureties of the executrix are in no better position to resist complainant's claim than the executrix herself. They undertook for her faithful administration ; and her first duty was, to present complain- ant's interest. There is no reason why they should be treated with more indulgence in this case than in others ; and if they could have been made liable at any time to complainant, that liability continues until barred by the statute of limitations.— 6 Porter 393 ; 9 ib. 697 ; 21 Ala. 433. The sureties can claim no protection under the decree of the Orphans' Court, as that court had no power to discharge them.—Carroll v. Moore, 7 Ala. 615.

GIBBONS, J.—It must now be deemed the settled law of this court, that where no provision is made for the wife by the will of the husband, it is not necessary for her to dissent from the will, as prescribed by the act of 1812 (Clay's Digest 172 § 3), in order to avail herself of the provision which the law makes in her favor.—Green v. Green, 7 Porter 19 ; Martin's Heirs and Administrators v. Martin, 22 Ala. 86. The objection, therefore, that the complainant in the court below did not dis- sent from the will of the said John Cole, within the time pre- scribed by law, cannot avail the defendant as a bar to her rights, as no provision whatever was made for her in said will.

But it is insisted, that, although the complainant may not be barred by reason of her failure to dissent from the will of her husband within the time prescribed by law, yet, by her adultery after she eloped from her husband, she has forfeited her dower rights, and therefore cannot obtain the relief which

she seeks. In support of this position, it is insisted, that, although, by the common law, adultery did not operate a forfeiture of dower, yet, by the act of Westminister 2, Edward I, it was made to have that effect; and, inasmuch as that act was passed prior to the settlement of this country by our ancestors, it must be considered as part of the common law in this country ; and therefore, regarding this statute as in force in this State as a part of the common law, the complainant is barred of all claims in the premises. In the view which we take of the case made by the record, we do not deem it important to decide whether the English act referred to is in force in this State, as a part of the common law, or not. The bill is filed, not for dower proper in the lands of the decedent, but for a distributive share of the personal estate of the said John Cole. We do not regard the claim set up as a common law claim, but one purely statutory— not of dower proper, but as heir to the deceased. We regard the second section of the act of 1812 (Clay's Digest 173 § 4), not as enlarging merely the dower rights of the wife, but as creating an heir to the husband's personal estate unknown to the common law. This statute we regard as making a species of forced heir in the wife as to the personal estate of the husband, which he can in no way defeat by his will or otherwise. This act, creating as it does an heir to the personal estate who takes absolutely what falls to her, has to be construed by itself, and is not to be considered dower, nor is it subject to any of the disabilities of dower ; but, being the creation of a right unknown to the common law, purely statutory, it can only be subject to the disabilities created by the statute itself calling it into existence. In this view of the case, it becomes entirely immaterial whether adultery in this State operates a forfeiture of dower or not, as the demand set up by the bill is not one of dower, which is a common law right, but a demand as heir (a forced heir, if you will, of the deceased), which is a right purely statutory ; and as the statute creating this right has not thought proper to make adultery a forfeiture of the right, we have no power to legislate ourselves upon the subject, and to create a disability where the statute is silent upon the subject. This view of the case is decisive, as to the complainant's right to recover on the case made by the record.

It is shown, however, that the estate of the said Cole was

finally settled in the Orphans' Court of Mobile County, before the presentation of the complainant's demand. The Chancellor disregarded this settlement, and held both the executors and their sureties liable to the complainant's demand. In this, we think, the court erred. There must be some time when the liability of executors and administrators and their sureties ceases, and we see no reason whatever for holding the one or the other liable longer than the final settlement of the estate according to law. This, in our opinion, is the extent of their contract. If a party having a claim against an estate, fails to present it until after the final settlement of the estate, it is his misfortune, so far as the representative and his sureties are concerned. His only remedy then is, to follow the assets in the hands of the heir or distributee. To hold otherwise, would be to hold that the liability of an executor or administrator and his sureties was unlimited as to time. To this proposition we cannot assent. The complainant's bill, therefore, should have been dismissed as to all the parties defendant except the said Hannah Turner and her husband, and as against them the decree should not have been in their representative capacity, but *de bonis propriis*.

The decree of the Chancellor is, therefore, reversed, and the cause remanded, with orders to let the bill stand dismissed as to all the parties except the said Turner and wife ; that an account be taken as to the personal estate of the said John Cole, and that the one half of the said personal estate, after the payment of the debts of the said John, be decreed to the complainant, against the said Turner and wife, to be collected out of the property of the said Hannah. It is further ordered, that the complainant, or appellee, pay the costs of this court.