### In re ESTATE OF COX.
### COX v. COX.

No. 13712—Opinion Filed June 19, 1923.

Rehearing Denied July 31, 1923.

(Syllabus.)

**1. Descent and Distribution—Legislative and Judicial Powers.**

Who takes, and to what extent, the property of an intestate decedent, is for legislative determination, and the courts can write no limitations into such statutes.

**2. Same—Right of Wife to Inherit—Effect of Criminal Acts.**

The statute fixes the interest which the wife takes in the property of her deceased husband, and no exception is made on account of her conduct, criminal or otherwise.

**3. Same—Desertion of Husband and Bigamous Marriage.**

Although the wife deserts her husband, and enters into a bigamous marriage with another, with whom she lives until her husband's death, in the absence of a statute, she

cannot be precluded or estopped from asserting her interest in his estate.

#### 4. Marriage—Invalidity—Burden of Proof.

Where a marriage has been consummated in accordance with the form of the law, the law indulges a strong presumption in favor of its validity. One who asserts the invalidity of such a marriage, because one of the parties thereto has been formerly married and the spouse of such former marriage is still living, has upon him the burden of proving that the first marriage has not been dissolved by divorce or lawful separation. The record examined, and held, this presumption is overcome, and the burden is sustained.

Error from District Court, Osage County; C. C. Smith, Judge.

In the matter of the estate of Gilbert Cox, deceased. Petition by Catherine Cox claiming share of estate denied, and she brings error, making Dorothy Cox defendant in error. Reversed.

Peters, Sands, Holcombe & Holden, and Johnson & Johnson, for plaintiff in error.

Vaughan & Shinn and Chas. B. Wilson, Jr., for defendant in error.

BRANSON, J. Gilbert Cox departed this life in Osage county, Okla., August 30, 1920. S. S. Mathis, as administrator, petitioned the county court of said county to determine the heirs of the said decedent. Whereupon one Catherine, nee Cole, sometimes called Fletcher, the name of her stepfather, filed her petition in the county court, alleging that the sole heirs of the said Gilbert Cox were his daughter, Dorothy Cox, designated in this proceeding as defendant in error, a minor about 8 years of age, and herself, Catherine Cox or Catherine Morrison, the widow of the said Gilbert Cox, and that they were entitled to succeed to all of his property, share and share alike.

On trial in the county court, the issues joined as to right of the said Catherine Morrison to participate in the property of the decedent; same was denied by the county court. An appeal was taken to the district court of Osage county, where, on hearing before the district judge without a jury, the finding of the district court was against the petitioner, Catherine Morrison, excluding her from any right to participate in the estate of the said Gilbert Cox by reason of having been his wife, and she appeals to this court to reverse said judgment.

The assignments of error are in general language, but the question argued by counsel is, Was Catherine Morrison the legal wife of Gilbert Cox at the time of his death, and entitled, as such, to an interest in his property? For convenience, the petitioner, Catherine Morrison, will be referred to as the plaintiff, and the daughter, Dorothy Cox, as defendant.

There is no dispute between the parties that the decedent, Gilbert Cox, was on July 11, 1918, in statutory form, married to Catherine Cole, now Catherine Morrison, and that they lived and cohabitated together as husband and wife for approximately two months thereafter, at which time the said Catherine left Gilbert Cox, and did not live with him any more, and was living separate and apart from him at the date of his death. It is not disputed that on May 28, 1920, a marriage license was secured from the proper officer in Tulsa county, Okla., under which the said Catherine Morrison, under the name of Catherine Fletcher, and one Kelsie Morrison entered into a pretended marriage contract in due form of law. That she and Kelsie Morrison, after said ceremony, went to Hominy, in Osage county, and that there they lived together as husband and wife. The evidence developed that after Catherine separated from Gilbert Cox, she had stayed for a short time in Oklahoma City, and a short time in Tulsa, but that the residences of herself and Gilbert Cox were at all times in Osage county. The evidence and records of the proper officers were introduced from Osage, Tulsa, and Oklahoma counties, showing that no divorce was ever granted in either of said counties, but disclosing that Catherine had filed a suit for divorce against Gilbert Cox in Osage county on March 17, 1919, but that no decree was ever entered thereon, and said suit was dismissed April 4, 1920.

For reversal of the district court of Osage county, denying the plaintiff the rights prayed in her petition to take one-half of the property of the decedent as his wife, under and by reason of the statute on succession, the plaintiff says that there was no divorce ever granted either herself or Gilbert Cox, and that at the time of his death she was, as a matter of law, his wife, and entitled to her share of his estate. The defendant, however, contends in part that the plaintiff has not shown by that degree of certainty, facts necessary to overcome the presumption that a divorce had been granted, and that the holding and ruling of the district court on this proposition should be sustained.

As to this, we cannot agree with the contention of the defendant. While, where a prior marriage, if not dissolved, would invalidate a second marriage duly entered into, the law requires the person assailing its legality to assume the burden and establish that no divorce was ever granted. The evidence in this case shows that these parties were citizens of the Osage Tribe of

Indians; that their home at all times was in Osage county; that while Catherine had been in Oklahoma and Tulsa counties at intervals, the records disclose that no divorce was ever granted her in either of said counties, and no divorce was granted her husband, Gilbert Cox.

In the case of Copeland v. Copeland, 73 Oklahoma, 175 Pac. 764, among other things, this court said:

"They relied principally, if not wholly, upon the presumption in favor of the validity of the second marriage. Mr. Freeman, in his notes to the case of Pittinger v. Pittinger, 89 Am. St. Rep. 200, in regard to the evidence sufficient to overcome the presumption of divorce, lays down the rule as follows: 'If it is conceded that a person attacking a marriage, on the ground that a former spouse of one of the parties is living, must show that the first marriage has not been dissolved, still he is not required to make plenary proof of such negative averment. It is enough that he introduces such evidence as, in the absence of all counter evidence, affords reasonable ground for presuming the allegation true. When this is done the onus probandi is thrown on his adversary.' (Schmisseur v. Beatrie, 147 Ill. 210, 35 N. E. 525; 1 Greenleaf on Evidence, 78.)"

We think that the plaintiff sustained the burden, and the presumption of the validity of the second marriage was overcome, and that the bonds of matrimony entered into between plaintiff and Gilbert Cox on the 11th day of July, 1918, were still in full force and effect at the date of his death, August 30, 1920.

The defendant next contends that even if there had been no divorce, the conduct of the said Catherine should be held to estop her from asserting any interest in the property of the said Gilbert Cox, it appearing that she had deserted him, and had lived in a bigamous marriage with Kelsie Morrison, and was so living at the time of the death of the said Gilbert Cox. Sections 8417 and 8418, Rev. Laws, Okla. 1910, provide:

"Sec. 8417. The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration.

"Sec. 8418. When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner:

"First. If the decedent leave a surviving husband or wife, and only one child, or the lawful issue of one child, in equal shares to the surviving husband, or wife and child, or issue of such child."

And the plaintiff contends that, since there is no exception provided in said statutes, and no condition under which the wife of the decedent is not permitted to participate on the grounds of her adultery, bigamy, or any other criminal act on her part, she cannot be excluded or estopped by reason of her relation with Kelsie Morrison. With this contention we feel constrained to agree. While the subject may be one which the legislative branch of the government, which alone has the power to determine the rules of descent of property, might properly give attention, to the end that greater equity or justice might be done in an extreme case as here presented, the court has no power to alter the law of descent as it is written by the Legislature. The general rule which seems to have been applied by the courts in cases of this sort is fairly accurately set forth in 14 Cyc., at page 83:

"In the absence of statutory provision to the contrary, the fact that a wife had abandoned or deserted her husband, or even the fact that she abandoned him and lived in adultery, does not bar her rights as surviving widow in his estate, except under an early English statute as to dower. And the same is true of a surviving husband's rights in his deceased wife's estate. In some states, however, statutes declare a forfeiture of a surviving wife's rights in her husband's estate where she has left him and been living in adultery; and there are statutes forfeiting a husband's rights in his deceased wife's property, because of his desertion of her, or his willful neglect or refusal to support her." etc.

And also 18 C. J., page 857:

"In the absence of statutory provision to the contrary, the fact that a wife had abandoned or deserted her husband, or even the fact that she abandoned him and lived in adultery, does not bar her rights of inheritance in his estate, and the same is true of a surviving husband's rights in his deceased wife's estate. In some states, however, statutes declare a forfeiture of a surviving wife's rights in her husband's estate where she has left him and been living in adultery, or has left him without justification; and there are statutes forfeiting a husband's rights in his deceased wife's property, because of his desertion of her, or his willful neglect or refusal to support her, etc., but of course statutes of this nature apply to such cases, and such cases only, as come within their terms. Under the California Code, a widow is entitled to the whole of her deceased husband's estate only when she is a member of his family at his death, so as to be entitled to demand support of him."

In an early Alabama case, Turner et al. v. Cole, 24 Ala. 364, the reasoning of which has been followed by many courts, in which, under the circumstances here found, it was sought to invoke the common-law rule which, on desertion by the wife of the husband, coupled with her living in adultery with another man, deprives her of the right to claim dower, that court said:

"In this view of the case, it becomes entirely immaterial whether adultery in this state operates a forfeiture of dower or not, as the demand set up by the bill is not one of dower, which is a common-law right, but a demand as heir (a forced heir, if you will, of the deceased), which is a right purely statutory; and as the statute creating this right has not thought proper to make adultery a forfeiture of the right, we have no power to legislate ourselves upon the subject, and to create a disability where the statute is silent upon the subject. This view of the case is decisive, as to the complainant's right to recover on the case made by the record."

In the case of Holloway v. McCormick, 41 Okla. 1, 136 Pac. 1111, and de Graffenreid v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 640, this court held that, in the absence of a statute, one spouse could not be precluded from inheriting from the other by reason that the decedent was murdered by the surviving spouse.

In the case of Nolan v. Doss (Ala.) 31 South. 969, it is said:

"Under Code, section 1462, providing that if there are no children, the widow of the decedent is entitled to all his personal estate, such estate must be decreed to her, though she had abandoned her husband, and was living with another man, holding herself out as his wife."

However reluctant this court may feel that these rules of the law meet the situation here presented on principles that best serve public policy, and right and justice, we have and are left no alternative except to follow the rules of descent or succession as prescribed by the legislative branch of the government. Since the bonds of matrimony duly entered into between the decedent and the plaintiff were never dissolved, the plaintiff at the time of the death of Gilbert Cox was as a matter of law his wife, and entitled under the statute to participate in his properties as provided therein.

It follows that the judgment of the district court must be reversed, with instruction to enter a judgment vacating the judgment of the county court, and directing said court to enter a decree not inconsistent herewith.

JOHNSON, C. J., and McNEILL, NICHOLSON, MASON, COCHRAN, and KENNAMER, JJ., concur. BRANSON and HARRISON, JJ., dissent.

BRANSON, J. (dissenting). I agree with that part of the opinion of the court in this case which concludes that the presumption of the validity of the second marriage was overcome by the showing in the record that there was no divorce, but cannot agree that the judgment of the district court should be reversed.

The contention made for the defendant in error, Dorothy Cox, that Catherine Morrison abandoned any rights which she might have otherwise been entitled to, and that she should be estopped by her conduct from asserting any interest in the property of Gilbert Cox as his wife, should be upheld.

This raises a question on which the defendant in error points out no adjudicated case directly in point, nor have I been able to find any. The statute under which the petitioner, Catherine Morrison, claims in this action is sections 8417, 8418, Rev. Laws, Okla. 1910, which provide:

"8417. The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration.

"8418. When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends and must be distributed in the following manner:

"First. If the decedent leave a surviving husband or wife, and only one child, or the lawful issue of one child, in equal shares to the surviving husband, or wife and child, or issue of such child."

Section 3883, Rev. Laws 1910, defines marriage as a personal relation, arising out of a civil contract. At common law, an heir was a person who took from an ancestor or relative, by reason of consanguinity. Section 3349, Rev. Laws 1910, provides:

"A husband and wife contract towards each other obligations of mutual respect, fidelity and support."

And section 3354, Rev. Laws 1910, provides:

"A husband and wife cannot by any contract with each other alter their legal relations, except as to property."

Section 3359, Rev. Laws 1910, provides:

"A husband abandoned by his wife is not liable for her support until she offers to return, unless she was justified by his misconduct in abandoning him."

And section 4642, Rev. Laws 1910, puts in force the common law as modified by the

Constitution and statutes in aid of the general statutes of the state.

Although the above quoted statute on succession purports to place the husband or wife in his or her right to succeed to the property of the other on the same footing as an heir at common law, yet, from the statutes and the nature of the relation, it must be conceded her right under the statute finds its inception in contract, and that the provisions of the statutes touching the relation of husband and wife and obligation of each to the other are written into each and every provision thereof. The law, in dealing with the property of the husband and the right of the wife to take the same, uses the word "wife" in its meaning of one in fact, and not merely technically so by reason of a marriage contract having been entered into. Richard v. Lazard, 108 La. 540.

In the case of Prater v. Prater (Tenn.) 10 Am. St. Rep. 623, in discussing the rights of the widow to take the property of the deceased husband, the court said:

"But if she willfully and without excuse deserted the family and eloped and lived with an adulterer or otherwise so demeaned herself that she may never in morals nor in law require the husband to receive her back again, she is in such case not a member of his family while he lives, and does not become his widow in contemplation of the homestead laws, when he dies. By all rules of public policy and good morals, the complainant in this case had forever excluded herself from the society of the family circle and home of her husband in his lifetime, and by the same rules, she is excluded from the enjoyment of his homestead after his death."

In the case of Daniels v. Taylor, 76 C. C. A. 141, the Circuit Court of Appeals for the Eighth Circuit discussed at considerable length the question of the right of a widow to receive dower in the property of her husband, under and by virtue of the provisions of the statutes of Arkansas, extended over the Indian Territory, and in said cause concluded that at common law, where the wife deserted the husband and lived in adultery with another, she was precluded from claiming dower in the property of her husband. The court in said case concluded, as to those sections of the statute undertaking to give the widow a right in the husband's property, as follows:

"These sections quite plainly contemplate the case of a widow who in the lifetime of her husband lived with him as a member of his family, and performed the duties of that relation, and not one who willfully separated from him, performed none of the duties of a wife, and by her gross misconduct, disqualified herself from succeeding him as the head of the family."

In the case of Chrisman v. Linderman (Mo.) 10 L. R. A. (N. S.) 1209, the Missouri Supreme Court said:

"Nevertheless, dower may be lost. For instance, it being a reward of chastity, it was lost at common law by the wife's adultery. Thus speaketh the oracle of the common law in that behalf: 'A woman leaving her husband of her own accord, and committing adultery, loses her dower, unless her husband takes her back of his accord.'"

In the case of Richeson et al. v. Simmons, 47 Mo. 20, in discussing the right of the husband in the property of the wife, whom he had deserted, the court said:

"It may be reasonably inferred that there is not any very amicable feeling of relationship existing between them. Under such circumstances does the law demand or require the absurdity of Mrs. Barclay, when she wishes to dispose of her private property, going to Mr. Hill and asking him to join in the conveyance, when at the same time he professes to be the husband of another woman? The length of time that has elapsed, the manner in which each party has regarded and treated the other, ought to operate as an effectual estoppel and preclude either party from an attempt to intermeddle in the affairs of the other. * * * I think that as Mr. Hill has voluntarily renounced his marital rights, and, by a course of policy persisted in for more than 20 years, led Mrs. Barclay and the whole world to believe that all control or interest on his part had ceased and been surrendered, he can no longer be a party, nor need he be consulted in any disposition she may see proper to make of her property. Any other conclusion would be promotive of injustice and lead to the greatest hardship."

In the case of Duke v. Reed, 64 Tex. 713, that court said:

"The abandonment by Mrs. Dorn having been willful, or, in other words, without cause, and continuing till the death of her husband, she forfeited all claim to the homestead which he owned at the time of his death, and which she refused to share with him."

In the case of Odiorne's Appeal, 54 Penn. St. 175, the wife of the decedent voluntarily abandoned him, and refused, over his repeated importunities, to return to him, assigning as she did, by letters, her lack of affection for him, and her refusal to ever consent to live with him again. Upon his death, she returned, claiming the interest in his property which the law of the state gave the widow. The Supreme Court of that state in the syllabus said:

"Where a wife leaves her husband and

renounces all conjugal intercourse a considerable time before his death, she becomes not such a widow, after his death, as was in the contemplation of the Legislature when the Acts of Assembly were passed which entitle her to administer his estate and to appropriate $300 of it to her own use. It has been held that desertion for more than twelve years forfeits her rights under these statutes: 2 Am. Law Reg. 510. Nor is a wife within their meaning who has lived in a foreign country and never formed part of her husband's family here: Spier's Appeal, 2 Casey, 233. Nor a wife who, by articles of separation, has relinquished all her rights in her husband's estate. Dillinger's Appeal, 11 Casey; 357."

And in the body of the opinion:

"Now this lady, who could defy her husband's sorrowful entreaties to return to the duties of a wife, ought not to be so prompt to seek the rights of a wife, after driving him into a premature grave. It is to the faithful wife, who lives with her husband, and sustains and comforts him as he descends into the dark valley, that the law gives rights which it withholds from her who forgets and repudiates both vows and duties."

There are many cases reported in the authorities where the doctrine of estoppel closely analogous to equitable estoppel has been invoked in cases where wives have abandoned their husbands and formed adulterous relations with other men, thereby renouncing their marriage ties, to preclude their taking the property which, under the statute, they would have otherwise been entitled to take. Arthur v. Israel (Colo.) 25 Pac. 81.

In the case at bar, Catherine, never unmindful of the fact that she had been married to Gilford Cox in due form of the law, nor unmindful of the fact that she had not been divorced from him, and, so far as the record discloses, without the knowledge on the part of Kelsie Morrison, voluntarily entered into a marriage in the city of Tulsa with Kelsie Morrison, with whom she lived as his wife up to the time of the death of Gilbert Cox, and who at the time of the trial of this cause testified that Kelsie Morrison was her husband. She accepted the benefits, whatever they were, of this second marriage contract, and by unmistakable evidence she renounced the elements of the contract of marriage with Gilbert Cox, written therein by the statute, to wit: "Obligations of mutual respect, fidelity and support." She voluntarily abandoned Gilbert Cox, and without excuse.

The cases above quoted in reference to the rights of the wife in the property of the husband, under the statutes and the rule of the common law, denying the wife dower where she without justification deserted her husband and lived in adultery, are not cited herein for the purpose of advocating judicially writing into the statute of Oklahoma on succession a provision not therein incorporated, but they are referred to for the purpose of showing that in the evolution of the law as to the rights of a wife in the property of her deceased husband the courts have always held that there was a fealty due from her to him, in order that her inchoate right to assert a claim to his property at the time of his death might ripen into an estate therein.

The technical existence of the marriage relation has, alone, never given the wife or widow an absolute right in the properties of the husband which certain misconduct on her part would not preclude her asserting, and does not now give her this right, unless the statutes of modern states, which purport to put her on a par with the heirs by blood, accomplish this result. There are many judicial decisions from the appellate courts of the Union which vest title in the wife—irrespective of her conduct—by reason of statutes similar to the one under which the petitioner herein claims, the courts saying and assigning, in effect. that they cannot write into the statutes on succession conditions which the Legislature has not seen fit to incorporate therein; but no case has been cited where the facts are as here found.

Marriage, while a civil contract, is something and considerably more. It is a civil status, existing by authority of law, between persons of opposite sex, in the formation of which, and in the dissolution of which—if dissolved except by death—the state. in the interest of society, has never abandoned, but has always asserted its interest. The growth of the law has recognized an increase in the interest of the wife in the property of the husband, not for the purpose of enriching her, but for her comfort, support, and maintenance, as well in his lifetime as after his death, should she survive.

We have above pointed out that under the express language of the statute of this state the wife who deserts the husband without justification is not entitled to support of the husband until she offers to return. While dower has been abolished by the statute, and this common-law estate is no longer received by the wife on the death of the husband, yet can it be argued in reason that the legislative intent and purpose was that a wife, deserting her husband without excuse, should not receive anything from him during his lifetime, unless she offered to return, but in case of his death, which under these conditions it could hardly be presumed that she

would greatly regret, she could then succeed under the name of "wife" to half of all of his property, in event there survived only one child?

No case is cited by counsel, and we fail to see any good reason why, when she by contract of marriage with another repudiates in a manner as to which there can be no doubt, as to proof, her obligations to her husband, and fails and refuses without fault on his part, to extend to him that fellowship to which he is entitled, until death has rendered it impossible for her to do so, and then she hastens to assert the invalidity of her second marriage, only for the purpose of taking a half interest in the property left by him, and which his infant child would otherwise receive, and to use it as a means of comfort in her lascivious conduct with Kelsie Morrison, which had its inception in her bigamous marriage.

We think it shall best serve the interest of public welfare, not to undertake to engraft upon the statute of succession that which is not written therein, but that she should be held to have renounced her vows, and held in contempt the public policy of the law, touching her marriage contract, on which her rights, if any, in her husband's property are based, and to have abandoned all claims to the rights arising from such marital contract, and her right under the law to have the same enforced by her unwarranted desertion of her husband, and her entering into the bigamous marriage relation with Kelsie Morrison, and that she should be estopped from asserting the invalidity of her second marriage, and claiming under these conditions to be entitled as the wife of Gilbert Cox to an interest in his estate.

I think the judgment of the trial court, denying her an interest in the property of the deceased, should be affirmed.

HARRISON, J., concurs in this.