## UNITED STATES v. McCARTY.

### No. 2890.

Circuit Court of Appeals, Tenth Circuit.

July 31, 1944.

Norman MacDonald, Atty. Dept. of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., and John C. Harrington, Atty. Dept. of Justice, of Washington, D. C., on the brief), for appellant.

Z. I. J. Holt, of Tulsa, Okl., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The sole question presented by this appeal is whether under the law of Oklahoma a husband who abandoned his lawful wife and contracted a bigamous marriage with another woman and thereafter lived and cohabited with her, may claim a share in the deceased wife's estate according to the law of descent and distribution. The facts are not in dispute.

Sallie Norton, a full-blood Cherokee Indian, was married to Fred Norton, a white man, on August 12, 1935, at which time she had a son, Oscar Chuwalooky, by a former marriage. Fred abandoned Sallie, and on January 10, 1937, without securing a divorce, entered into a marriage relationship by a statutory ceremony with another woman in the State of Arkansas, and never thereafter resumed his marriage relationship with Sallie. Sallie Norton died intestate on February 12, 1937, and included in her estate was a twenty-acre tract of restricted tax-exempt land located in Tulsa County, Oklahoma, and by reason of the restricted character of the land, no probate proceedings or judicial determination of heirship was had thereon. On November 6, 1937, the son, Oscar Chuwalooky, conveyed an undivided one-half interest in the land to William Swiggett, and the deed was duly approved by the proper court in Oklahoma. On December 7, 1937, the surviving husband likewise conveyed to Swiggett an undivided one-half interest in the land. Swiggett died on April 8, 1940, and the lands descended to Matilda McCarty, appellee here.

This suit was instituted in the District Court of Tulsa County by Matilda McCarty to quiet title to the lands and to judicially determine that the legal heirs of Sallie Norton were Fred Norton, surviving husband, and Oscar Chuwalooky, only child, and to adjudge that the deeds executed by these heirs transferred to Swiggett a good and legal title to the lands. The Superintendent of the Five Civilized Tribes was served with notice of the action in pursuance of Section 3 of the Act of April 12, 1926, 44 Stat. 239, 240, and the suit was thereafter duly removed to the United States District Court for the Northern District of Oklahoma.

The United States intervened in its own behalf and on behalf of its Indian ward, Oscar Chuwalooky, alleging in substance that since Fred Norton had abandoned Sallie and entered into a marriage relationship with another woman by a statutory ceremony, he thereby terminated his marriage relationship with Sallie, and is therefore not entitled to a distributive share as a surviving spouse under the succession laws of Oklahoma; that Oscar Chuwalooky as

the only child of Sallie was the sole and only heir, and entitled to inherit the lands involved here to the exclusion of Fred Norton. The intervenor prayed that title to the one-half interest which Norton had heretofore conveyed to Swiggett, and which had descended to Matilda McCarty, be quieted in Oscar Chuwalooky.

The trial court held that although Fred Norton had abandoned his lawful wife and entered into a pretended marriage relationship with another woman, he nevertheless remained her lawful husband and was therefore entitled to participate in the distribution of her estate in accordance with the applicable laws of the state of Oklahoma. The court further found and concluded that Fred Norton and Oscar Chuwalooky, as surviving husband and child, were the sole and only heirs of Sallie Norton, and therefore entitled to participate in the estate equally; and by reason of their separate conveyances to Swiggett, the appellee is the owner of the full legal and equitable title to the lands.

On appeal, the United States contends in effect that by reason of the misconduct of Norton, he is estopped from participating in the estate of his wife, whom he had long since abandoned for another woman, and with whom he maintained a marriage relationship.

■ Under Oklahoma law of descent and distribution, if any person die seized of any estate which is not limited by marriage contract or testamentary disposition, leaving a surviving spouse and one child, the estate must descend to the surviving spouse and one child in equal shares. 84 O.S.A. § 213. Fred Norton, not having been legally divorced from Sallie Norton, was her lawful husband at the time of her decease, although he had long since abandoned her and entered into a pretended marriage with another woman. Copeland v. Copeland, 73 Okl. 252, 175 P. 764; Cox v. Cox, 95 Okl. 14, 217 P. 493, 495, 34 A.L.R. 432. It follows therefore that under the mandate of the statute, he is entitled to share equally with the son in the lands of Sallie Norton as a surviving husband, unless by his unfaithful and unworthy conduct he is estopped to assert his statutory right.

■ This identical question was squarely presented to the Oklahoma Supreme Court in Cox v. Cox, supra, and the majority held that unless forbidden by statute, one spouse did not forfeit his or her statutory right to inherit from the deceased spouse although he or she may have abandoned the deceased spouse long before and entered into a pretended marriage relationship with another. The court said it had "no alternative except to follow the rules of descent or succession as prescribed by the legislative branch of the government," citing with approval the case of Nolan v. Doss, 133 Ala. 259, 31 So. 969, 970, in which the Alabama court was likewise constrained to follow the mandate of a statute which provided that the personal estate of persons dying intestate without issue should descend to the widow. In holding that the bigamous misconduct of the wife was immaterial to the issue of inheritance under the statute, the Alabama court said that since the statute made no exceptions on account of the wife's conduct, even in cases of voluntary abandonment, "the law, as it is written, is plain, and it is not within the province of the courts to ingraft upon it any exceptions. As long as the marriage relation, in law, continues, just so long the rights of the wife under this statute exists. * * * The doctrine of estoppel insisted on by counsel has no application." This view is supported by respectable authority in the same and other jurisdictions. Coker v. Coker, 160 Ala. 269, 49 So. 684, 135 Am. St.Rep. 99; Johns v. Cannon, 199 Ala. 138, 74 So. 42; Curry v. Barnes, 200 Ala. 256, 76 So. 22; Meyers' Adm'r v. Meyers, 244 Ky. 248, 50 S.W.2d 81; Wooten v. Carmichael, Tex.Civ.App., 267 S.W. 344; Brown v. Parks, 169 Ga. 712, 151 S.E. 340, 71 A.L.R. 271; Blount v. Dean, 187 Ga. 494, 1 S.E.2d 653; In re Torres' Estate, 61 Nev. 156, 120 P.2d 816, 139 A.L.R. 481. See also annotation 139 A.L.R. 486; Amer. Juris., Secs. 105–107. Cf. De Graffenreid v. Iowa Land & Trust Co., 20 Okl. 687, 95 P. 624; Holloway v. McCormick, 41 Okl. 1, 136 P. 111, 50 L.R.A.,N.S., 536, wherein a husband feloniously killed his intestate wife. The rule is founded upon the principle that the statutory law of succession or descent is not controlled by equitable considerations. In the very early case of Stegall v. Stegall, 22 Fed.Cas. page 1226, No. 13,351, it was held that a claim of a lawful wife to a distributive share of her husband's estate granted by statute was an absolute right of which she could not be deprived by a court of equity, however unworthy and reprehensible her conduct may have been when judged by equitable considerations.

The facts in the Cox case are not dissimilar or distinguishable from ours, and the expressions of a majority of the Oklahoma court on local law would ordinarily be conclusive here without notice or reference to the minority, were it not for the earnest contention of appellant that the subsequent case of Darrough v. Davis, 135 Okl. 263, 275 P. 309, overrules the majority and adopts the minority view in the Cox case, which invoked the doctrine of estoppel to deprive the erring husband of a distributive share in his abandoned wife's estate. The minority in the Cox case argued that the statutes of inheritance should be construed in the light of the obligations of mutual respect, fidelity and support which husband and wife contract toward each other under Oklahoma law, (R.L.1910, Sec. 3349, 32 O.S.A. § 1), and also in the light of the common law maxim adopted in some states which deprives a wife of her dower if she leaves her husband of her own accord and commits adultery—unless subsequently forgiven by her husband. See Arthur v. Israel, 15 Colo. 147, 25 P. 81, 10 L.R.A. 693, 22 Am.St.Rep. 381; Daniels v. Taylor, 8 Cir., 145 F. 169, 7 Ann.Cas. 352; Annotation, 71 A.L.R. 146. But see also Stegall v. Stegall, supra, which makes a plain distinction between common law dower right, which is expressly subject to the rule of fidelity and chastity, and the statutory right to a distributive share unlimited by statutory exception.

In the Darrough case, the claimant sought to inherit the estate of his stepdaughter who was the illegitimate child of his wife, on the grounds that he was next of kin to his deceased wife, whom he had admittedly abandoned and entered into a bigamous relationship with another. He claimed under the Oklahoma statute which provides that "if an illegitimate child who has not been acknowledged or adopted by his father, dies intestate, without lawful issue, his estate goes to his mother, or in case of her decease to her heirs at law." 11,304, C.O.S. 1921, 84 O.S.A. § 216. The maternal grandmother claimed the estate under Subsection 6, 84 O.S.A. § 213, 11,301, C.O.S.1921, which provides that "if the decedent leave no issue, nor husband, nor wife, and no father or mother, or brother, or sister, the estate must go to the next of kin * * *." The court held this section of the statute controlled the devolution of the decedent's estate; that the statute (84 O.S.A. § 216) forbidding the putative father from inheriting the estate of an illegitimate child whom he had not acknowledged or adopted, had no application, and hence the grandmother, as next of kin to the illegitimate child, inherited the estate to the exclusion of the stepfather.

This construction of the statute was dispositive of the question presented, but the court said [135 Okl. 263, 275 P. 311]: "There is another reason why the stepfather cannot recover in this case, and that is on the ground of estoppel." The court recited the fact that Alven Sanders had abandoned his wife, Cora Inman, and without divorcing her married Maude Blount, with whom he thereafter lived as his wife, and as a result of which union two children were born; that after the death of Cora Inman, and not until then, he publicly announced that he had never been divorced from her, and as her surviving husband and heir at law asserted the right to inherit the estate of her illegitimate child. The court held that since he did not speak when he ought to have spoken, he should not be permitted to speak now when it would label his wife a bigamist and himself an adulterer during all the time he remained silent; that this course of conduct was unsanctioned "in equity, good morals, settled law, nor public policy" and "on the ground of public policy, Alven F. Sanders should be estopped to deny his marriage relation with Maude Blount and should not be permitted to claim as an heir of Cora Inman."

In support of the application of the doctrine of estoppel, the court cited and quoted from James v. James, 131 Okl. 276, 268 P. 726. But the facts in that case are different from ours and the Cox and Darrough cases, and the decision there turned upon a point which has no application to our question. The facts and the question presented in the Darrough case are not however materially different from ours, and if we are to take what was said there in reference to the doctrine of estoppel as overruling the prior pronouncements of the same court in the Cox case, we have the duty to accept it as the law of Oklahoma and to apply it here, regardless of our conception of the underlying reasons and weight of authority. But the Darrough case does not mention the Cox case, and what was said there in connection with the application of the doctrine of estoppel, although not dictum, was not necessary to the disposition of the question of law presented for decision, while in the Cox case, as

here, the doctrine of estoppel was the very essence of the decision.

We cannot bring ourselves to the supposition that the Supreme Court of Oklahoma intended to overrule a doctrine so clear-cut and emphatically established without notice or reference to the case which so clearly announced it. We conclude that the Cox case is yet applicable and controlling of our question, and the judgment is affirmed.