SHANNON, Chief Judge.
This is an appeal from an order of the county judge,, in his capacity as probate judge, in which he found,: .
“1. That Ruby I. Robison was at the time of the death of R. B. Robison, Sr. his living, undivorced wife;
“2. That under the facts in the case there is nothing showing that the allowance of dower to her would be against public policy of the State, nor are there any facts shown which would estop her from dissenting from the will and asserting her claim for dower and having it allowed, or any other facts which would preclude her from being entitled to dower, and that Ruby I. Robison is entitled to dower in the real and personal property owned by R. B. Robison, Sr. at the time of his death.”
The facts in this case are not complicated. Prior to the year of 1927 R. B. Robison, Sr., and Ruby I. Robison were married and were cohabiting as husband and wife. R. B. Robison engaged in certain acts which, if proven would have been grounds for divorce, and which acts Ruby discovered and with which she charged her husband. Robi-son acknowledged the acts and stated he would not desist therefrom. There was a separation of the two parties and their children accompanied Ruby. It was maintained by Ruby that prior to the year of 1943 the defendant, Bonnie Robison, had taken up abode with Robison and that at that time Ruby went through a marriage ceremony with Wilbur Krause. She lived with him about ten months when she discovered that Robison had not secured a divorce from her, whereupon she left Krause. In 1959 Robi-son brought suit for divorce against Ruby, which suit for divorce she successfully, defended and the same was dismissed.
We have briefly outlined the essential facts in this case and from them evolves the question whether or not an estoppel to claim dower has been established against Ruby Robison. The final judgment appealed held that estoppel had not been established and that Ruby was entitled to dower in the estate of which her husband died seized.
In Florida dower is a statutory creature which presumes a valid, marriage-and which *374 vests upon the death of the husband when the spouse survives. F.S. Sec. 731.34, F. S.A.; In re Ginsberg’s Estate, Fla.1951, SO So.2d S39. This court in the case of Kyle v. Kyle, Fla.App.1961, 128 So.2d 427, 430, had the following to say concerning the attitude of the courts of this state toward the right of dower:
“Florida zealously maintains a traditional interest in preserving her sovereign and exclusive dominion over the lands located within her borders and has also evinced an abiding concern for the right of dower. The courts have kept vigil over the widow’s right in this respect. Expressive of this is the statement by Lord Bacon of a common observation of his day that ‘The law favored three things: Life, liberty and dower.’ Moore v. Price, 1929, 98 Fla. 276, 123 So. 768, 772; and 11 Fla. Jur., section 3, p. 32.”
In 28 C.J.S. Dower § 52, the following statement is found:
“* * * One who was legally married to decedent is entitled to dower in his estate notwithstanding she contracted a bigamous and illegal marriage with another- man during his lifetime. * * * ”
The minority view on this question and the one that is urged upon us by the appellant is represented by the case of Minor v. Higdon, 1952, 215 Miss. 513, 61 So.2d 350, 353, wherein the court stated:
“In our opinion Zelma was estopped by her conduct from claiming the rights of a surviving widow of the deceased. Zelma admitted in her own testimony that she had contracted a ceremonial marriage with Clarence Robinson in 1923 without obtaining a divorce from her former husband from whom she had been separated only a few months, and that she had lived with Clarence Robinson and had cohabited with him as his wife thereafter for a period of approximately ten months. She testified that she did not know at the time of her second marriage that Will had not obtained a divorce from her. But this was no excuse for her contracting a bigamous marriage relationship with a second husband. Zelma did know that Will was still alive, and that he was living in the same or an adjoining county, and that she had not obtained a divorce from him, and that she had not been served with a summons in any divorce proceeding that he may have instituted against her. Zelma’s marriage to Clarence Robinson under these circumstances constituted a complete repudiation of her marital status as the wife of Will Minor.”
The contrary view, and the one represented by the rule quoted above from C. J.S., is contained in the case of Brown v. Parks, 1930, 169 Ga. 712, 151 S.E. 340, 71 A.L.R. 271, wherein the wife had been away from her husband for more than 26 years and had been guilty of alleged unlawful conduct in marrying and cohabiting with other men. The Georgia court held that she was nevertheless entitled to marital rights, saying:
“If Eva Parks had been married on the date alleged to W. L. Parks, she continued to be his wife notwithstanding her alleged unlawful conduct in marrying or cohabiting with other men and in claiming the insurance upon the life of one of these men when he died; and this unbecoming and unlawful conduct upon the part of Eva Parks did not destroy her status as the wife of W. L. Parks, so as to prevent her asserting the rights of a wife to the property of the deceased husband. Nor can it be held that Eva Parks, by this unbecoming and unlawful conduct, was estopped, as against the plaintiff, from asserting her claim to the property of the decedent and procuring the appointment of an administrator. If she had been actually married at the date alleged to W. L. Parks and that marriage remained undissolved, though in *375 the interval between her marriage and the death of her husband she might have been guilty of conduct which would have authorized her husband to procure a divorce, if the husband did not repudiate her and did not procure a divorce, she was, under the law, still his wife when he died, with the right to dower, year’s support, and other rights based upon her marital relations to the deceased; and if she was the only heir, she was entitled to all of his estate, subject, of course, to the claims of creditors. It follows that all matters set up as estoppel against Eva Parks should have been stricken upon demurrer. * * * ”
Citing the case of Brown v. Parks, supra, with approval, the Supreme Court of Tennessee in the case of Swift v. Reasonover, 1935, 168 Tenn. 305, 77 S.W.2d 809, 810, stated:
“The wife’s right to dower, however, is upon' a different basis. Dower is an estate in the land fixed by marriage and death of the husband. It is not dependent upon either the wife’s conduct nor her residence and, as held by the Court of Appeals, is not waived by her misconduct or abandonment of her husband. Such is the rule stated in Brown v. Parks, 71 A.L.R. 284. That rule is in accord with our cases dealing with the wife’s right to dower.”
See also Estes v. Merrill, 1915, 121 Ark. 361, 181 S.W. 136; Cox v. Cox, 1923, 95 Okl. 14, 217 P. 493, 34 A.L.R. 432; and the annotation in 71 A.L.R., commencing at page 277.
The case of Kreisel v. Ingham, Fla.App. 1959, 113 So.2d 205, while not decided under our dower statute, F.S. Sec. 731.34, F.S.A., held that the husband was not es-topped from inheriting from his deceased wife under the facts therein. The wife had obtained a decree of separate maintenance against her husband and it was alleged that after he had become delinquent in support payments, he disappeared and was not heard of until after the wife’s death, some 14 years later. The opinion by Judge Allen discusses the earlier case of Doherty v. Traxler, Fla.1953, 66 So.2d 274, and reviews generally the law on this question.
While we do not mean to imply that the principle of estoppel may not find application in any case where a wife has contracted a marriage with another man during her first husband’s lifetime, we hold that the undisputed facts of the instant case do not raise such an estoppel.
Affirmed.
SMITH, J., concurs.
WHITE, J., concurs specially.