## Montgomery Coal Corporation v. Allais.

(Decided February 14, 1928.)

### Appeal from Perry Circuit Court.

1. Receiver.—Court of equity may take over insolvent private corporation and place receiver in charge thereof and authorize issuance of receivers' certificates to displace prior liens on the property, if necessary for preservation of property, but it cannot operate the business, nor incur any further expense to the prejudice of prior lienholders without their consent, function of court being to adjust differences, prevent damages, and enforce rights; but different rule applies to insolvent public service corporations, operation of which is necessary for public convenience and to preserve existence of franchises.
2. Attorney and Client.—That attorney, who as representative of interest of insolvent lessee coal company insisted on receiver's continued operation of lessee's mine, as representative of lessor, opposed such operation, held not to show such consent by lessor to operation of mine as to estop it from relying on its legal rights, in absence of showing that attorney's attitude was brought home to it.
3. Receivers.—In view of the good faith of receiver of insolvent coal company, and of other parties involved, in operating leased coal mine without lessor's consent, and in absence of any formal objections or exceptions other than those made in pleadings, all equities in favor of receivers' certificates should be liberally construed.
4. Receivers.—Where assets of insolvent coal company were sold, court properly gave precedence to state, county, school, and income taxes, receivers' payment for royalties on leased premises, fire insurance, court costs, attorney's fees, and allowances to receivers for services and actual expense of preserving property and receivers' certificates, proceeds of which were used for such purposes, over claims of general creditors and lessor's claim to royalties.
5. Receivers.—Where lessor of coal lands, intervening in bondholders' suit against insolvent lessee, did not seek sale of lessee's assets until it filed second peition several months after filing original intervening petition, and prayer of latter petition for sale of assets was immediately gathered, it was in no position to complain of delay in selling property and of expense of maintaining and operating it.

6.    Chattel Mortgages.—Under Ky. Stats., sections 496, 2316, lien of
     conditional seller under conditional sale contract, recorded before
     cars sold were placed on leased coal-mining property, had priority
     over lessor's lien for royalties.

7.    Chattel Mortgages.—Though conditional seller's lien for coal cars
     which lien, under Ky. Stats., secs. 496, 2316, had priority over les-
     sor's lien for royalties, should have been enforced by a separate
     sale on receiver's sale of insolvent buyer's assets instead of being
     included in gross sale, held that, in view of fact that balance un-
     paid on cars was less than one-third of cost price thereof, and
     that purchaser at receiver's sale had been using cars for two
     years, conditional seller's claim will be directed to be given pre-
     cedence over lessor's lien for royalties against proceeds of sale of
     lessee's assets.

8.    Receivers.—Where assets of insolvent coal company were sold by
     receiver, cost of maintaining spur track to mine prior to and dur-
     ing receivership held not entitled to priority over lessor's lien
     for royalties, in absence of showing that work was necessary for
     preservation of mine.

J. W. CRAFT for appellant.

FAULKNER & FAULKNER, MORGAN & EVERSOLE, F. J.
EVERSOLE and W. W. REEVES for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Reversing.

This suit involves a controversy between the lessor
of an insolvent mining corporation and its other creditors
including holders of receivers' certificates. The principal
issues are of fact thus: On July 1, 1918, the Montgomery
Coal Company, hereinafter called the lessor, leased to
the Montgomery Creek Coal Company, hereinafter called
the lessee, 590 acres of coal land for mining purposes;
royalties being 10 cents short ton, with provision for
$6,000 annual minimum royalties, beginning January 1,
1920. Timber above 16 inches was excluded and a lien
given on all of the effects of the lessee including after-
installed machinery to secure rent. This was later
amended by a sale or lease of the timber in question in
consideration of the payment of $7,500, all of which was
deferred, and the coal royalties were made payable $500
monthly, lessee being given three subsequent years in
which to make up any annual deficit. Both leases were
properly executed, acknowledged, and recorded.

In September, 1924, the lessee, by its president and
board of directors, executed a deed of trust to L. F. Bra-

shear for $125,000 and authorized him to issue that sum in 20-year 6 per cent. bonds, secured by a lien on all of the property including the timber.  By writing duly executed, acknowledged, and recorded, the lessor agreed for this to be done, provided the lien executed to the trustee was subordinate to its lien for rent.  Fifty-three of these bonds for $1,000 each were sold to Whitney and Kimmer and eighteen of the same denomination to the Perry County State Bank.  The lessee defaulted in payment of interest, and on March 25, 1925, the trustee and the bondholders filed suit to precipitate this indebtedness and to enforce their lien, alleging insolvency of defendants and improper business methods, and asked for a receiver. This motion was sustained and on May 25, 1925, George E. Smith was appointed receiver, and empowered to issue and sell receivers' certificates for the purpose of preserving the property. The lessee filed answer and counterclaim asserting that the bondholders had agreed and contracted to take the entire bond issue, and relying on their failure to do this as a defense.  On August 3, 1925, the lessor filed an intervening petition setting up a prior lien on all of the property of the lessee, and protesting against the receiver operating the property, or incurring any indebtedness except in its preservation, or issuing receivers' certificates thereon with a lien paramount to its liens, or for any purpose, save for the preservation of the property.  This pleading was signed by J. W. Craft as attorney.

On August 7, 1925, Smith, as receiver, filed report showing that he had acted only in the preservation of the property and showing his expenditures therein.  No exceptions were taken to this report, but on September 14, 1925, the lessee entered motion to remove George E. Smith as receiver, and in support of the motion filed the affidavit of its president, in which it complained that Smith was not operating the mine and insisted that this should be done.  This motion was signed by several attorneys, including J. W. Craft, who was acting as attorney for the lessor.  On September 15, 1925, the court sustained the motion and removed Smith as receiver and appointed A. L. Allais in his stead and authorized him to take charge of the mine and operate it and to use receivers' certificates in such maintenance and operation as should be ordered by the court.  George E. Smith was the only one who excepted to this order.

On the 21st of September, 1925, the bondholders moved to dismiss their petition and this was overruled. On the same day George E. Smith, as receiver, filed a final report, in which he reported a claim of the lessor for $13,500 for rents and royalties, stating that it was a prior lien and his inability to pay it; also reporting the expense of maintaining the property during his receivership, which, together with his own services and taxes, amounted to $————, and this was allowed by the court, no exceptions being taken. On September 22, 1925, the lessee entered written motion for the court to determine whether the certificates issued by Allais should be a prior lien over its mortgages or over the rents and royalties due the Montgomery Coal Company. This motion was overruled. On the 26th of September, 1925, Allais filed his first report looking toward the operation of the mine and stating the amount essential to meet the first two pay rolls and the necessity of purchasing some steel for trackage and asking authority to issue $5,000 in receivers' certificates, and this was allowed without objection or exception. On the 15th day of December, upon a further report of the receiver, the court directed him to issue a receiver's certificate for $500 to pay current taxes amounting to $472.55, and on the 6th day of January, 1926, upon his further report, he was authorized to issue and sell additional certificates not exceeding $4,500 to provide a fund to repair a spur track and pay for work done thereon by the Louisville & Nashville Railroad Company, to pay off the indebtedness due the Baker Car Company and to install a cable for the power service.

On February 22, 1926, the court directed the issual of two certificates of $1000 and $848.16, respectively, in payment of the salary of G. E. Smith as receiver and of the expenses incurred in the preservation of the property during his term as receiver; all these reports and allowances being made in open court without objection by any one. On the 5th of May, 1926, the lessor, represented by J. W. Craft as attorney, filed amended answer and cross-petition, still protesting against the receiver operating the property and against the receiver's certificates issued by him being adjudged a prior lien to its debt, asserting for itself a prior lien on the property for $21,937.89, the amount of its royalties and amount of its timber contract and taxes paid by it for the year 1924, with interest, and for the enforcement of the liens by asking a sale of the property. Some time prior to this an order had been

entered directing all creditors of the lessee to file their claims in this action, which was done, the total claims amounting to something over $121,000, particular reference to be made later to such claims as were allowed priority in the final judgment. On the 8th day of May, 1926, judgment was entered for a sale of the property, reserving the marshaling of liens for future determination. Sale on this judgment was reported on the 16th day of June, 1926. No exceptions were filed thereto and it was approved on the 26th of June, 1926. The property was appraised at $53,000. The lessor became the purchaser at the sum of $20,000; and it also effected some arrangement with the lessee by which it acquired the equity of redemption.

The case was finally submitted and on January 10, 1927, judgment was rendered allowing various claims, including judgment for the lessor for the amount of its claim, and marshaling the liens in the order of their priority. This required a collection of the sale bonds and out of the proceeds substantially directed payment as follows: (1) State, county, and school taxes, and arrears of income taxes due the United States of America by the lessee company, and the court costs in this action; (2) the receivers' certificates aggregating $9,402.74; (3) the claim of the Louisville & Nashville Railroad Company, and the Meems-Haskin Coal Company, for $696.41 and $758.51 respectively; (4) the debt of the lessor; (5) the debt due the bondholders, and, lastly, if any funds remained, this to be divided among the general creditors. However, the sum was insufficient to pay anything on the last two claims. The lessor and the Baker Coal Company excepted. The former appeals and the latter asks a cross-appeal, the principal question involved being as to the priority of the certificates and prior liens.

The rule of law applicable to this case is for the most part clearly stated and well settled. A court of equity may take over an insolvent *private corporation* and place a receiver in charge if the exigencies of the situation require it, and may authorize the issual of receiver's certificates which will displace prior liens on the property if it is necessary to do this for the preservation of the property, but it cannot operate the business nor incur any further expense to the prejudice of prior lienholders without their consent. The function of the court is to adjust differences, to prevent damage, and to enforce rights, not to conduct the business of private corpora-

tions. It is not prepared to engage in commerce and for it to undertake to engage in private business generally would be extremely hazardous to owners and lienholders, and lead into a field that it is not prepared to enter. A different rule applies to insolvent railroads and other public service corporations the existence of whose franchises depends upon continuous service, and which service is also necessary for the convenience of the public, and as to which, operation by a receiver by means of receivers' certificates to the displacement of prior liens is permissible. This entire subject was carefully considered and a reference made to the authorities in Freeman v. Craft, 220 Ky. 15, 294 S. W. 822, in which the above conclusions are reached. In this case appellant not only did not consent, but, on the contrary, strongly objected to the operation of the mine or to the issual of receivers' certificates except for the purpose of preservation. True, its attorney Mr. Craft appears to have taken inconsistent positions by representing the lessee who was insisting on operation, while he was representing the lessor who was opposing such operation; and from this fact an inference might be drawn that these two companies had an understanding in the matter. But it is not shown that knowledge of Mr. Craft's attitude was brought home to appellant (lessor) and we are not prepared to say that his conduct was such as to show its consent to the operation of the mine or to estop it from relying on its legal rights. Though in view of the recognized good faith of the receiver and the other parties involved, and of the absence of any formal objections or exceptions to the reports and orders (aside from the pleadings mentioned), all equities in favor of the certificates should be liberally construed.

2. From what has been said, it follows that the court properly gave precedence to state, county, and school taxes, and arrears of income taxes due the United States by the lessee company. To these should be added all such of the same items as had previously been paid by the receivers, all amounts paid by them for royalties on the leased premises and for fire insurance on the leased property, together with court costs and attorney's fees, and allowances to the receivers for their services and the actual expense of preserving the property. And as it appears there were no funds on hand at the time the receiver took charge, it is evident that such of these as have been paid by the receiver were paid out of the pro-

ceeds of the receivers' certificates; hence for such payments precedence must be given the certificates over other liens. Also a quantity of supplies purchased with receivers' certificates for the operation of the mine were on hand at the close of the operation and formed part of the effects sold at the decretal sale. To the extent that such supplies increased the sale value of the property we think it equitable for this fund to be credited. There is some claim that the receiver added lasting valuable improvements in the way of fixtures for which also should have been credited, but we hardly think this justified by the facts.

In authorizing the salary of the receiver, Allais, and the necessary expenses incurred by him in maintaining the property to be paid out of the proceeds of the receiver's certificates, we have not overlooked the argument that:

"The sale was postponed by reason of the operation of the mine; that if the property had been sold in the fall of 1925 the expenses of maintaining the mine until June, 1926, would have been obviated; and, as it is not shown that the property would have brought a less figure at that time if sold, that such expense ought not to be allowed."

This argument might apply in some cases, but not in this one. Here appellant did not seek a sale until the filing of its second petition, and the prayer of that pleading was immediately granted, and it was therefore not in a position to complain of this matter.

3. Before consolidation of the various claims the Baker Car Company in a separate suit obtained a judgment against the lessee for the sum of $803.33 and was adjudged a superior lien on 25 mine cars, but was denied enforcement of the judgment because the property was in the hands of a receiver. Its claim was based on a written contract of conditional sale, duly executed, acknowledged, and recorded on the 27th of June, 1924, by which it had sold the cars in question to the lessee for the sum of $2,078.33, of which $1,469.97 had been paid, leaving the balance stated. On final judgment the court directed payment of this claim by a receiver's certificate and ordered the car company to accept such payment. On its appeal appellant challenges this ruling and the Baker Car Company by cross-appeal insists that the court should have sold the mine cars separately for the

satisfaction of its lien, and that it erred in including them in the gross sale, but that as appellant has accepted and is using the cars it is liable for the debt. Under the established rule in this state the effect of the conditional sale was to vest the title to the cars in the lessee with a lien in favor of the seller for the purchase price, and, as this instrument was properly recorded before the property was placed in the mine, such lien was entitled to priority over the lien of the lessor. Sections 496 and 2316, Ky. Stats.; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732. The lien should have been enforced by separate sale, but as the debt was less than one-third of the cost price of the cars it can hardly be doubted that the amount of the gross sale was enhanced as much as this lien debt by an inclusion of the cars in the sale. Again, as the purchaser at decretal sale has been using these cars for two years, a resale of them is not now practicable, and we think it equitable to cancel the receiver's certificate directed to be issued to the car company and to direct that its claim be given precedence over appellant's lien and paid from the sale price of the mine.

4. It appears that the leased mine is at the mouth of Montgomery creek near the Louisville & Nashville Railroad track, and that a spur runs up from that railroad to and in front of the Meems-Haskin Coal Company mine, and that prior to and during the receivership the Louisville & Nashville Railroad and the Meems-Haskin Coal Company made certain improvements on this right of way which they claim were necessary for its maintenance, and for which they filed claims for $696.41 and $758.51, respectively. These were awarded priority over appellant's claims. We think the court was in error as to this. The continued operation of the Meems mine and of this mine might have rendered work on the spur necessary; but it is not shown that this work was essential for the preservation of this mine, and under the rule stated, supra, appellant's lien should have been given precedence over this claim.

Wherefore judgment is reversed on both the original and cross appeals, and cause remanded for proceedings consistent with this opinion.