## Meyers' Administrator v. Meyers.

(Decided April 22, 1932.)

(As Modified on Denial of Rehearing June 17, 1932.)

EUGENE MOSLEY, JR., for appellant.

J. F. COMBS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Grace E. Meyers, claiming to be the widow of James B. Meyers, filed this action in the Bullitt circuit court on July 8, 1930, against the appellant and defendant below, George T. Wilson, administrator of the estate of James B. Meyers, by which she sought the recovery of a judgment against defendant in the sum of $750 as her distributable share as such surviving widow, allowed to her in the fifth subdivision of section 1403 of our present Statutes. The answer resisted the recovery sought by the petition upon two grounds: (1) That plaintiff, before the death of her husband, forfeited her right to the allowance for which she contended by abandoning him and taking up her abode with her mother in Cincinnati, Ohio, and (2) that the appraisers of her husband's estate never set apart to her any of the property making up the allowance provided for by the statute, and that there had never been any sale by defendant of the personal property of the decedent, and that many of the specific articles and items composing it were still in existence and on the farm left by decedent in Bullitt county, and that plaintiff's remedy was to require them to be valued and set apart to her in payment pro tanto, or in full of her claim, if ground (1) should be disallowed. Subsequent pleadings and motions made the issues and upon trial a jury was waived and the cause submitted to the court, followed by a judgment against defendant for the full amount sued for to be realized from assets in the hands of the defendant, as administrator, and from that judgment he prosecutes this appeal.

The proof upon defense (1) developed these facts: Mr. and Mrs. Meyers were married on June 13, 1913, and thereafter resided upon a farm owned by the husband in Bullitt county. They had no children and about two years before the husband's death plaintiff left Bullitt county and went to live with her mother in Cincinnati, Ohio, where she seems to have obtained employment, but whether her departure was temporary or permanent does not satisfactorily appear from the testimony. It is shown, however, that defendant occasionally visited her husband in Bullitt county, and there is no testimony to establish that there was ever any friction or domestic trouble between them. It, furthermore, appears that

plaintiff's life on the somewhat isolated and remote farm on which they resided was unsatisfactory to her for some cause, and she tried to persuade her husband to go with her, but he declined, though it is not shown that he objected to the course she pursued. But we are not concerned as to what were the facts with reference to the separation, since we have concluded that, there being no divorce legally separating the parties, plaintiff was entitled to her distributable share under the statute, notwithstanding she may have intended the separation to be permanent .

Defendant's counsel cites cases from foreign jurisdictions holding to the contrary; but, upon examination, it will be found that in the majority, if not all, of them there existed an applicable statute expressly providing that a permanent abandonment by the widow of her husband before his death forfeited all her rights under the statute. At any rate such holdings were bottomed upon the construction given by the court to the particular local statute governing the rights of the parties, and are not even persuasive, unless the terms of the statute construed bore some similarity to analogous ones in our statute, which latter we do not find to be true in any of the cited cases. We construed our governing statute, supra, in our opinion in the case of Eversole v. Eversole, 169 Ky. 793, 185 S. W. 487, 488, L. R. A. 1916E, 593, contrary to defendant's contention. In that case the facts were that the widow murdered her husband and was convicted therefor and sentenced to confinement in the penitentiary. She asserted, among other things, her right to the $750 allowed by the statute to surviving widows, and in the opinion we upheld her claim.

In the course of that opinion, wherein the question of forfeiture was treated, we therein said:

"In this state the property rights of a widow in the estate of her deceased husband are controlled entirely by statute. She is entitled to an absolute estate in one-half of his surplus personalty, and to an estate for her life in one-third of his real estate, unless the right thereto has been barred, forfeited, or relinquished. She and the infant children of the decedent are also entitled to have set apart to them, as exempt from distribution and sale, personal property or money of the value of $750. Kentucky Stat-

utes, sec. 2132 [applying to real property], and section 1403, subsec. 5. A wife may forfeit her interest in her husband's estate by adultery or bigamy. Kentucky Statutes, secs. 2133 and 1217. Her interest may be barred by jointure or by divorce. Kentucky Statutes, secs. 2136 and 2144. She may also relinquish her dower right by deed or mortgage. Kentucky Statutes, sec. 2135; Schweitzer v. Wagner, 94 Ky. 458, 22 S. W. 883, 15 Ky. Law Rep. 229. Here then, we have a case where the Legislature has provided in clear and unambiguous language that on the death of the husband the widow shall have certain property rights in his estate, unless those rights have been barred, forfeited, or relinquished. . . . They contain no provision forfeiting her property rights in case she kills her husband; nor is such a forfeiture provided for in any of our statutes regulating crimes and providing punishment therefor."

The opinion then proceeds to say that the right of the widow is purely a statutory one, and that it is not the function of courts to ingraft upon the statute giving it an exception that its plain and unambiguous language does not warrant, and for which reason the forfeiture therein contended for, though based on no less ground than murder of the husband by the wife, could not be upheld. If that opinion be correct (and which we do not question), then, a fortiori, would the abandonment relied on in this case be insufficient to forfeit plaintiff's right, where, at most, the charge against her only deprived her husband of her personal association, but spared him his life.

It will, therefore, appear that the only forfeitures available against the widow in this state are those contained in the excerpt from the Eversole opinion, and which does not include abandonment not followed by divorce. That opinion is in harmony with the general rule adopted by the courts of this country as formulated in the text of 18 C. J. 857, sec. 100, saying: "In the absence of statutory provision to the contrary, the fact that a wife had abandoned or deserted her husband . . . does not bar her rights of inheritance in his estate." In the place of the asterisks is found this language: "Or even the fact that she abandoned him and lived in adultery."

But we omitted it from the inserted excerpt because this case involves no such question, since there is no intimation that plaintiff is or had ever engaged in any such conduct. The text continues by stating that: "The same is true of a surviving husband's rights in his deceased wife's estate."

It is also pointed out in the text, following those excerpts, that the question in some of the states is regulated by express statutes. The Eversole opinion correctly points out that we have no such statute, and in the absence of any, the law seems to be clear that no forfeiture is produced by either spouse abondoning the other when not followed by legal separation by divorce. The text in 9 R. C. L. 62, sec. 54, is to the same effect, as that contained in the cited Corpus Juris. We therefore conclude that defense (1) was properly disallowed by the court.

Strenuous argument is made in an effort to sustain defense (2), to the effect that, inasmuch as the administrator had made no sale of the personal property of the decedent, and that it consisted in kind at the time of the filing of the action the widow should have demanded that so much of it as was necessary to satisfy her claim be set apart to her, and that she should be required to accept such action of the appraisers in satisfaction of her claim, and for which reason she is not entitled to recover a money judgment against the representative of her husband's estate. It is furthermore contended that this defense should be sustained, because, as alleged, plaintiff never demanded or requested of defendant, as the personal representative of her husband's estate, satisfaction of her claim, and that her right to maintain the action did not accrue to her until such demand was made. The argument overlooks the fact that the attorney for plaintiff did demand of the personal representative that her rights as surviving widow, given to her by the statute, be satisfied as the law directs, and that he was informed by the administrator that his attorney, Finley F. Gibson, Jr., and who was also attorney for the heirs, some of whose interests in the estate he had purchased, advised him that plaintiff was entitled to nothing as surviving widow, upon the ground that she had abandoned her husband before his death. Furthermore, the attorney, representing himself as such purchaser, and the other heirs as their attorney, directed the administrator to not

sell any of the personal property, but to employ it in running the farm, or to permit him and the heirs to do so, and which latter was done, and all the stock and other farming implements, composing the greater bulk of the personal property, were so appropriated thereafter. We, therefore, have a case where the personal representative denied plaintiff's rights and declined to sell the property, and who also consented for it to remain upon the landed premises of the decedent and to be employed in connection therewith by those succeeding to its title, one of whom was his attorney, who had purchased the interest of some of the heirs. The personal representatives thereby relinquished possession of the personal property to the title holders of the land of the decedent and they employed it in the operation of the farm.

We have no trouble in concluding that such conduct created in law a conversion of that property and an appropriation of it to the benefit of the heirs who were entitled to it after plaintiff's claim was satisfied, and which rendered the estate liable to her at lest to the extent of the value of such converted property and which was and is more than sufficient to satisfy her claim. It, therefore, becomes unnecessary for us to determine whether plaintiff originally could be compelled to accept any specific articles of personal property at their appraised value in satisfaction of her claim, since the conversion of it, and the employing of it for the benefit of the estate, gave her the right to look to the estate for its value and which the trial court properly so held.

Many of the cases cited in the notes to section 1403 supra of our statutes were rendered prior to the act of March 12, 1912, which is chapter 72 of the acts of 1912, and which radically changed the exemptions in favor of the surviving widow and children of the deceased husband, and for which reason many of the questions determined by those decisions have no application. We do not attempt herein to determine the contentions made in the first part of defense (2) either the one way or the other, but base our decision exclusively upon the fact of the conversion of the tangible personal property of the decedent as hereinbefore pointed out.

Wherefore the judgment is affirmed.