## International Harvester Co. et al. v. Dyer's Adm'r et al.

March 17, 1944.

56

Craft and Stanfill for appellants.

Barney W. Baker, Lewis E. Harvie, W. W. Reeves, D. G. Boleyn and Elwood Rosenbaum for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

These three appeals grow out of an action wherein various creditors attempted to collect their debts from the insolvent estate of Fred R. Dyer, who died intestate. The appeals were consolidated here and will be disposed of in one opinion. Only one question is raised on appeal, and that is the priority of liens.

Throughout the opinion for convenience the International Harvester Company will be referred to as International; the Allstate Equipment Company, as Allstate; the Montgomery Coal Corporation, as the Corporation; and the Unemployment Compensation Commission, as the Commission.

The action was brought by P. H. Hyden, administrator, to settle the insolvent estate of Dyer, a resident of Perry County who died intestate on Jan. 30, 1942, survived only by a widow who resided in Bluefield, West Virginia. Dyer had leased certain coal lands located in Knox County, Ky., from the Corporation on Nov. 15, 1939, for a term of four years with an option to renew the lease for an additional four years on the same terms. The lease called for a minimum royalty of $25 per month, payable monthly, and provided that if Dyer became sixty days in arrears in the payment thereof, the lessor had the option to terminate the lease, in which event all improvements placed on the leased premises became the property of the lessor. At the time of his death Dyer was operating the mine and was in arrears in the payments of royalty from August 1941 amounting to $483.79.

The administrator made the lessor and all creditors parties defendant and called upon them to answer and assert their liens and claims. Various creditors filed pleadings asserting liens and the cause was referred to Hon. C. C. Wells, Special Commissioner, to hear and report claims and determine priorities. This he did and certain of the creditors filed exceptions thereto which were passed on by the chancellor who entered judgment fixing the priority of liens and ordered a sale of the prop-

erty in satisfaction thereof. Only three creditors appeal, International, Allstate and the Commission, and, as stated at the outset of this opinion, the only question raised is the priority of liens.

The Commission filed a pleading setting up its claim for unemployment compensation contributions owed by Dyer in the sum of $566.79, and in addition thereto certain penalties and interest, which claim the chancellor did not mention in his judgment. Inasmuch as this pleading was filed after the Special Commissioner made his report, it is surmised that the chancellor overlooked it since it was decided in Com. v. Durham, 290 Ky. 408, 161 S. W. (2d) 610, 140 A. L. R. 1040, that the contribution KS Sec. 4748g-7, KRS 341.270, requires the employer to make to the Commission is a tax lien under KS Sec. 4748g-8, KRS 341.310, which is on a parity with other tax liens. It follows that the chancellor should have adjudged a tax lien to the Commission in the sum sought.

Hon. Selden R. Glenn, Collector of Internal Revenue, filed claims for federal taxes due the United States aggregating $1,057.01. The chancellor correctly adjudged $376.21 of this sum to be a preferred lien for taxes, United States v. Emory, 314 U. S. 423, 62 S. Ct. 317, 86 L. Ed. 315. The collector complains in his brief that the chancellor erred in not adjudging the balance of $680.80 to be a preferred tax lien. However, he did not appeal from the judgment, therefore the ruling of which he complains is not before us.

However, U. S. Code, Title 26, Sec. 1562, 26 U. S. C. A. Int. Rev. Code, Sec. 3672, provides that the United States lien for this tax is not valid against any mortgagee, purchaser or judgment creditor unless notice thereof has been filed by the collector as therein provided. In construing this statute in United States v. Beaver Run Coal Co., 3 Cir., 99 F. (2d) 610, it was held that a mortgage lien was entitled to priority over a government tax lien upon mining property where the tax notice had not been filed as provided by the federal statute. In the instant case one mortgage of International was recorded Sept. 20, 1941 and its other mortgage was record Sept. 23, 1941, and the mortgage of Allstate was recorded on Nov. 25, 1941. The collector filed his first notice of a tax lien on Sept. 21, 1941, therefore it would not take priority over International's first recorded

mortgage, but the notice filed by the collector before Sept. 23, 1941, takes precedence over International's other mortgage, and all such notices duly filed by him before Nov. 25, 1941, take precedence over the mortgage of Allstate.

In insisting it is entitled to a forfeiture of the lease (which under the terms of that instrument would carry with it the improvements Dyer placed on the property) by reason of Dyer being in arrears for more than sixty days in the payments of royalty, the Corporation relies upon such authorities as 32 Am. Jur. Sec. 848, p. 720, and Sec. 880, p. 745; Wender Blue Gem Coal Co. v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732; Blue Ridge Coal Co. v. Hurst, 196 Ky. 432, 244 S. W. 892. But the question of whether or not the chancellor erred in not decreeing a forfeiture is not before us as the Corporation did not appeal. However, appellants question the correctness of the chancellor's judgment directing that the Corporation's claim for $738.79 representing royalty due to Jan. 1, 1943, to be paid ''ahead of all other claims whatever,'' which we interpret as taking precedence over taxes and court costs.

The chancellor seems to have realized that the Corporation was entitled to a forfeiture of the lease when he refused to so adjudge, because he directed that its claim for royalty be first paid. Likewise, the Corporation appears to have been satisfied with the assurance that it would receive payment in lieu of obtaining a forfeiture of the lease since it did not appeal. It would appear from the wording of the judgment that the chancellor did not decree a forfeiture because of the hardship it would work upon the other creditors and that the Corporation should be satisfied with recovering the amount of its debt. While the chancellor did not err in adjudging the Corporation a preference for the royalty, he did err in directing it paid before taxes, court cost and labor claims were satisfied. But the laborers do not appeal, therefore we cannot disturb that part of the chancellor's judgment putting the Corporation's royalty ahead of labor claims.

Nor does the claim for royalty come ahead of the claims of International and Allstate, since they hold mortgages on certain equipment which were executed and recorded before such equipment was placed in the mine. It was written in Montgomery Coal Corp., v.

Allais, 223 Ky. 107, 3 S. W. (2d) 180, in construing KS Sec. 2316, KRS 383.080, that where the seller's lien for purchase money was recorded before the property was placed in the mine that such lien was entitled to priority over the lessor's claim for royalty. In that opinion it was said that the lienholder was entitled to a separate sale of the equipment upon which it had recorded a purchase-money lien before the equipment was placed in the mine.

There is an additional reason why International and Allstate are entitled to a separate sale of the equipment upon which they hold mortgages, which is that the labor claims are superior to these mortgages and should there be sufficient property subject to the labor liens to satisfy them without resorting to the mortgaged property, the labor liens should be satisfied therefrom and leave the mortgaged property to satisfy the mortgage liens.

It is not disputed that the laborers in Dyer's mine have a lien under KS Secs. 2487 and 2488, KRS 376.150 and 376.160, for wages due within six months before distribution of the property among Dyer's creditors since they met the requirements of KS Sec. 2491, KRS 376.190, by filing their claims with the administrator within sixty days after the mine closed upon Dyer's death and by filing their pleading in this action within sixty days after the administrator brought suit to settle the estate, Gugenheim v. Watkins, 167 Ky. 639, 181 S. W. 357; Turner v. Randolph, 213 Ky. 55, 280 S. W. 462; Freeman v. Craft, 220 Ky. 15, 294 S. W. 822; McGlone v. Smith, 293 Ky. 131, 168 S. W. (2d) 566.

Section 2488, KS, KRS 376.160, provides that labor liens "shall be superior to the lien of any mortgage or other encumbrance theretofore or thereafter created." It is not contended that these labor liens do not come ahead of the mortgages. Likewise, they come ahead of the Corporation's claim for royalty reserve in the lease because such a reservation could have no higher rating than a mortgage. The chancellor erred in placing the Corporation's lien for royalty ahead of the labor liens, but as above stated, we are not concerned with this error because the laborers did not appeal.

The chancellor was in error in adjudging that the undertaker's claim for $100 was on a parity with the lien for court cost. We have construed KS Sec. 3868,

KRS 396.090, wherein an undertaker is given a preferred claim against a decedent's estate as applying to the assets in the hands of the personal representative for distribution and that it does not take precedence over a mortgage lien. Cox v. Higginbotham's Adm'r, 76 S. W. 1079, 25 Ky. Law Rep. 1057; Milward v. Shields, 43 S. W. 184, 19 Ky. Law Rep. 1076, 35 L. R. A. 506. And Blades v. Blades' Adm'r, 289 Ky. 556, 159 S. W. (2d) 407, holds that a widow's $750 exemption provided in KS Sec. 1403, KRS 391.030, is superior to an undertaker's claim.

It is insisted that as the widow, Mrs. Dyer, was not residing in Kentucky at the time of her husband's death that KS. Sec. 3868, KRS 396.090, deprives her of the widow's exemption of $750 provided in KS Sec. 1403, KRS 391.030. This question was set at rest in Meyers' Adm'r v. Meyers, 244 Ky. 248, 50 S. W. (2d) 81, wherein it was written that a divorced wife living in another state separate and apart from her husband, who was a resident of Kentucky, is not deprived of a widow's distributable share in her husband's estate. But the $750 exemption due the widow is not entitled to preference over a mortgage. Blake v. Durrell, 103 Ky. 600, 45 S. W. 883, 20 Ky. Law Rep. 270. As a mortgage is inferior to a labor lien under KS Sec. 2488, KRS 376.160, and as the widow's exemption of $750 is inferior to a mortgage, it follows that her exemption is also inferior to the labor liens.

To summarize: The chancellor should have adjudged that the taxes due the Commission, and the $376.21 of the United States tax claim be allowed as a first preferred lien, and the court cost should first be paid. However, under U. S. Code, Title 26, Sec. 1562, 26 U. S. C. A. Int. Rev. Code, Sec. 3672, no part of the property mortgaged to International and to Allstate can be subjected to the United States tax lien, nor to any other claim except in event the labor liens are unsatisfied, then the laborers may look to the mortgaged property. Of course, International and Allstate only have a lien on the equipment covered in their respective mortgages. The Corporation's claim for royalty takes precedence over the labor claims as to the mine and equipment (except the mortgaged property) as the laborers did not appeal from the judgment placing the royalty ahead of their claims. The widow's $750 exemption is inferior to the royalty, the mortgages and labor

claims, and the undertaker's claim is inferior to the widow's exemption. The chancellor adjudged the balance of $680.80 of the federal taxes to be a last lien and it must remain in this lowly place as no appeal was prosecuted by the collector. Should any balance remain of the assets of the estate, which is unlikely, it will be prorated among the common creditors.

The chancellor will direct the mine and all equipment, except that mortgaged to International and Allstate, be first sold, after which he will order the mortgaged property sold separately. Should the first sale not bring sufficient to satisfy the tax claims, court cost and labor liens, he will direct that the entire property be sold for the satisfaction of the liens set out in the preceding paragraph. Should the first sale bring sufficient to satisfy the tax claims, court cost and labor liens then the proceeds of the mortgaged property shall be paid to the holders of the respective mortgages after charging this property with its fair proportion of state taxes and the cost of this action, including the sale.

The judgment is reversed for proceedings consistent with this opinion.