# JOSEPH SCHMEIZL, ET AL. *v.* MATILDA I. SCHMEIZL

[No. 119, October Term, 1945.]

*Decided April 16, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Thomas G. Young, Jr.*, with whom was *William Lentz* on the brief, for the appellants.

*Anthony S. Fedrico* and *Harry Yaffee* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Matilda I. Schmeizl, appellee, lived with her husband, Frederick Schmeizl, in Baltimore nineteen years from August, 1911, when they were married, until August, 1930, when she left him and went to California. During the last fifteen years she has been living with a friend named Bert Phillips, first at Los Angeles and afterwards at Santa Rosa, and was known there as Mrs. Phillips. In 1943 Schmeizl died intestate without issue. Joseph Schmeizl, a brother, qualified as administrator of the estate in the Orphans' Court of Baltimore City. Mrs. Schmeizl came to Baltimore and claimed her distributive share in the estate, but the administrator questioned whether she was intestate's widow. The issue was tried

in the Superior Court of Baltimore City, where the jury found that she was not. On April 12, 1945, however, the Court of Appeals reversed the ruling and remanded the cause to enable the Superior Court to enter a finding that she was. *Schmeizl v. Schmeizl*, 184 Md. 584, 42 A. 2d 106.

After the decision of the Court of Appeals, the administrator filed a petition in the Orphans' Court alleging that Schmeizl's next of kin were his widow, himself and another brother, and three sisters, but conflicting claims had been made by them, and therefore asked that distribution be made under the court's direction and control. Mrs. Schmeizl answered that there was no ground on which the court could assume direction and control of distribution, and prayed that the petition be dismissed. On the contrary, the brothers and two of the sisters answered (1) that the Statute of 13 Edward I, Chap. 34, bars Mrs. Schmeizl from her widow's share in the estate, and (2) that it would be against public policy to allow her to inherit from her husband after she had abandoned him and lived for many years with another man. Under an express provision of our testamentary statute, the administrator of any estate may petition the Orphans' Court for a meeting of persons entitled to distributive shares therein on some day to be appointed by the court, and distribution may then and there made under the court's direction and control. Code, 1939, Art. 93, Sec. 151. While the duty of ascertaining who are the distributees of an estate rests upon the administrator, the statute furnishes a simple and adequate method of ascertaining the identity of the distributees and the share to which each is entitled to receive, and affords him complete protection if he complies with the conditions therein prescribed. *State, for Use of Czyzowicz v. Brown,* 170 Md. 97, 100, 183 A. 256. In this case the Orphans' Court, after a hearing on the petition, ordered the administrator to distribute the sum of $2,000 and one-half of the residue to Mrs. Schmeizl, and one-tenth of the residue to each brother and sister. The present appeal is from that order.

It has long been established at common law that, in the absence of statutory provision to the contrary, a widow will not be barred from her right of inheritance in her husband's estate, even though she has deserted him and lived in adultery. *Bryan v. Batcheller,* 6 R. I. 543, 78 Am. Dec. 454; *Meyers' Adm'r v. Meyers,* 244 Ky. 248, 50 S. W. 2d 81; *Cox v. Cox,* 95 Okl. 14, 217 P. 493, 34 A. L. R. 432; *In re Torres' Estate,* 67 Nev. 156, 120 P. 2d 816, 139 A. L. R. 481; *Loughran v. Loughran,* 292 U. S. 216, 54 S. Ct. 684, 688, 78 L. Ed. 1219; 26 *C. J. S., Descent and Distribution,* Sec. 59. Even if a wife contracted a bigamous marriage, she cannot be deprived of her widow's right of inheritance in her husband's estate; because the bigamous marriage is void and hence her status as widow is not destroyed. *Brown v. Parks,* 169 Ga. 712, 151 S. E. 340, 71 A. L. R. 271. In Pennsylvania it has been held that where a wife leaves her husband and lives in adultery she is barred from sharing in her husband's estate, but the court predicated that decision upon a Pennsylvania statute providing that "no wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband, shall have the right to claim any title or interest in his real or personal estate." *In re Lodge's Estate,* 287 Pa. 184, 134 A. 472, 473. The Statute of 13 Edward I, Chap. 34, enacted by Parliament in the year 1285, provides that if a wife "willingly leave her husband, and go away, and continue with her advouterer," she shall be barred from dower in her husband's lands, unless he should forgive her and take her back. 1 *Alexander's British Statutes,* Coe's Ed., 186-190. This statute has generally been recognized as in effect in the United States, either by adoption as part of the common law or by express legislative enactment; but, even if in force in Maryland, it could not bar Mrs. Schmeizl of her distributive share in her husband's personal estate, because the statute applies only to dower. *Mack v. Pairo,* 136 Md. 179, 110 A. 198.

Appellants urge the court to read an exception into the statute of distribution on the theory that the Legislature could never have intended any consequences so unjust. The doctrine of equitable construction, accepted by the Roman law, was introduced in England before the rise of courts of chancery. It was a conception of power, existing side by side with the law yet not in derogation of it, based upon reason and drawing its inspiration and guidance from the dictates of conscience and the principles of justice. The early English judges, disregarding the letter of the statute, extended its provisions to cases which in their judgment were within the mischief which the law was designed to remedy but which were not expressly provided for, and excepted from the operation of the statute those cases which were covered by its general terms but were excluded by reason and justice. But the doctrine giving the judge power to mould the statute in accordance with his notions of justice has no place in our law. We follow the fundamental rule that a court is not at liberty to surmise a legislative intention contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intention which is not evidenced in the original form. A statute should be construed according to the ordinary and natural import of its language, unless a different meaning is clearly indicated by the context, without resorting to subtle or forced interpretation for the purpose of extending or limiting its operation. Where there is ambiguity in the provisions of a statute, or the intention of the Legislature is doubtful, the court may look to the consequences; but where the language of the statute is clear and explicit, and expresses a definite and sensible meaning, the court cannot disregard the mandate of the Legislature and insert an exception, where none has been made by the Legislature, for the sake of relieving against hardship or injustice. *State Tax Commission v. Potomac Electric Power Co.,* 182 Md. 111, 116, 32 A. 2d 382; *Maryland Unemployment Compensation Board v. Albrecht,* 183 Md.

87, 36 A. 2d 666; *Black, Interpretation of Laws,* 2d Ed., 45-66.

The Maryland statute of distribution, as amended by the Legislature in 1933, directs that if there be a surviving widow, and no child or descendant of the intestate, and no parent, but the said intestate shall leave a brother or sister, or child or descendent of a brother or sister, the widow shall take $2,000 or its equivalent in property, or any interest therein, at its appraised value, and one-half of the residue. Acts of 1933, Chap. 386; Code, 1939, Art. 93, Sec. 130; *Marriott v. Marriott,* 175 Md. 567, 576, 3 A. 2d 493; *Webster v. Scott,* 182 Md. 118, 32 A. 2d 475. This statute prescribes positive and mandatory rules for the devolution of property, making nearness of relationship to the intestate, and not character or conduct, the controlling factor in determining the right to inherit. The court cannot adopt a public policy contrary to the plain provisions of the statute. The power to determine what is salutary for the people of the state resides in the Legislature. It is not the function of the court to determine whether the public policy which finds expression in legislation of this character is well or ill conceived. *Williams v. Mayor and City Council of Baltimore,* 289 U. S. 36, 42, 53 S. Ct. 431, 433, 77 L. Ed. 1015. As stated by this court on the previous appeal in this cause, if the policy of the statutes is to be expanded, it must be done by the Legislature. It is not for the court to determine whether the morals of the people would be improved, or whether perjury would be increased, by making next of kin avengers of marital wrongs alleged to have been committed against the intestate. *Schmeizl v. Schmeizl,* 184 Md. 584, 42 A. 2d 106. By express provision of the bigamy statute, a woman, on conviction of bigamy, shall forfeit her claim to dower in the estate of her first husband and also the share in his personal estate to which she would be entitled upon his death intestate. Code, 1939, Art. 27, Sec. 19. But there is no evidence that Mrs. Schmeizl was convicted of this crime, and therefore the

Orphans' Court has no authority to deprive her of the widow's share in her husband's personal estate.

Appellants seek to place this case in the same category with *Price v. Hitaffer*, 164 Md. 505, 165 A. 470, 139 A. L. R. 501, 503, wherein this court held that a murderer cannot share in the estate of his victim under the Maryland statutes of descent and distribution. That decision followed the notable opinion rendered by the Court of Appeals of New York in 1889 in *Riggs v. Palmer*, 115 N. Y. 506, 22 N. E. 188, 190, 5 L. R. A. 340, 347, 12 Am. St. Rep. 819, which held that a legatee who murders his testator will not be permitted to enjoy the benefits of the will on account of the maxims of the common law that a right of action cannot arise out of fraud, and no man shall take advantage of his own wrong. In that opinion Judge Earl said: "Under the civil law, * * * one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered. * * * But, so far as I can find, in no country where the common law prevails has it been deemed important to enact a law to provide for such a case. Our revisers and lawmakers were familiar with the civil law, and they did not deem it important to incorporate into our statutes its provisions upon this subject. This is not a *causus omissus*."

The New York decision provoked widespread controversy and conflict of authority throughout the country. The Supreme Court of Nebraska, for example, held in 1891 that a father could not inherit property from his daughter whom he had murdered (*Shellenberger v. Ransom*, 31 Neb. 61, 47 N. W. 700, 10 L. R. A. 810, 28 Am. St. Rep. 500), but in 1894 it reversed its decision and remarked that it had been swayed by the horror and repulsion with which it viewed the crime and its consequences, but inasmuch as the statute of descent was plain and unambiguous, and the intention of the Legislature was free from doubt, the murderer became vested with the estate upon the death of his daughter. *Shellenberger v. Ranson*, 41 Neb. 631, 59 N. W. 935, 939. But the New York court adhered to its decision, explaining in 1896

in *Ellerson v. Westcott,* 148 N. Y. 149, 42 N. E. 540, that the murder of a testator by a legatee does not render the legacy void, but merely empowers the court of equity to deprive the legatee of the fruits of his crime. Judge Cardozo commended the decision with this ·explanation: "There was the principle of the binding force of a will disposing of the estate of a testator in conformity' with law. * * * There was the principle that civil courts may not add to the pains and penalties of crimes. * * * But over against these was another principle, of greater generality, its roots deeply fastened in universal sentiments of justice, the principle that no man should profit from his own inequity or take advantage of his own wrong. * *. * Consistency was preserved, logic received its tribute, by holding that the legal title passed, but that it was subjected to a constructive trust." *Cardozo, The Nature of the Judicial Process,* 41, 42. Finally in 1932 the Supreme Court of South Dakota, after summarizing the discrepant views, concluded that the decision that a murder cannot inherit from his victim does not amount to usurpation of legislative power. *De Zotell v. Mutual Life Insurance Co. of New York,* 60 S. D. 532, 245 N. W. 58, 65; 139 *A. L. R.* 501.

However, the case of murder is far different from the case before us. Mrs. Schmeizl's conduct, reprehensible though it may have been, was not hidden from her husband. He could have debarred her from inheriting any part of his estate, if he had so desired. For many years he had ground for an absolute divorce, but he did not see fit to procure a divorce for reasons unknown to us. Whatever his reasons may have been, the inference to be drawn from his conduct is that he did not want to sever the relation of husband and wife. However that may be, the fact remains that he did not sever the relation.

> *Order affirmed and cause remanded for further proceedings, the costs to be paid out of the estate.*