607 P.2d 956

**In the Matter of the ESTATE of John W. BUHLER, Deceased.**

**Alice Ida BUHLER, Appellant,**

v.

**William R. ADKINS, Personal Representative of the Estate of John W. Buhler, Deceased, Appellee.**

**No. 14593–PR.**

Supreme Court of Arizona, En Banc.

Jan. 29, 1980.

Rehearing Denied March 11, 1980.

Boyle, Brown, Eaton & Pecharich by William Lee Eaton, Prescott, for appellant.

Favour & Quail by John M. Favour and Mark M. Moore, Prescott, for appellee.

HAYS, Justice.

While vacationing and visiting her niece in America, appellant, Alice Ida Buhler, a citizen of East Yorkshire, England, met, and soon thereafter married, the decedent, John W. Buhler, a 77-year-old resident of Mayer, Arizona. Within two weeks, however, appellant, apparently dissatisfied with her new marriage, returned to her native England and wrote the decedent, informing him that their vows had been overly hasty and a mistake, and of her intention to resume the use of her prenuptial name. Appellant wrote a similar letter to her niece. The decedent responded by filing a formal petition for divorce. Appellant's *pro per* answer indicated, *inter alia,* that,

> "I have never at any time (nor do I now) advance any claim or pecuniary interest in his [the decedent's] property or effects."

Appellant's husband died prior to the entry of a final decree of dissolution.

It is appellant's claim, as surviving spouse, for the family allowances and exemptions under A.R.S. §§ 14–2401, 2402 and 2403, which has given rise to the instant dispute. The trial court denied appellant's claim and the Court of Appeals affirmed (1 CA–CIV 4242, filed September 18, 1979). Taking jurisdiction pursuant to Rule 23, Arizona Rules of Civil Appellate Procedure, we vacate the opinion of the Court of Appeals.

Focusing initially upon the allowance in lieu of homestead and the personal property exemption, we note that the decisions of the various jurisdictions on this question reflect almost as many views as there are states in the nation. Appellee, relying on our opinion in *In re Graham's Estate,* 73 Ariz. 179, 239 P.2d 365 (1951), contends that eligibility for the benefits at issue is conditioned upon domicile within the borders of Arizona at the time of the passing of the decedent. We, however, reject this interpretation.

Initially, the language of the legislation at bar is unambiguous and susceptible of but one interpretation. Section 14–2401 provides that,

> [a] surviving spouse of <u>a decedent who was domiciled in this state</u> is entitled to an allowance of six thousand dollars. If there is no surviving spouse, each dependent child of the decedent is entitled to an allowance of six thousand dollars divided by the number of dependent children of the decedent. The allowance provided in this section is in lieu of any homestead exemption the decedent may have had during lifetime under § 33–1101 (emphasis added).

Similarly, § 14–2402 states:

> [T]he surviving spouse of <u>a decedent who was domiciled in this state</u> is entitled from the estate to value not exceeding three thousand five hundred dollars . . . in household furniture, automobiles, furnishings, appliances and personal effects. If there is no surviving spouse, dependent children of the decedent are entitled jointly to the same value (emphasis added).

■ The underscored language is unequivocal in requiring the domicile in Arizona of the decedent; however, the enactment places no similar residency requirement upon the surviving spouse. Had the legislature intended to additionally require residency of the survivor, it would have been a simple matter to insert appropriate language. Instead, in our opinion, by so providing, the legislature's primary purpose of protecting the surviving spouse during the period of administration was balanced against the realization that allowing these benefits in every state in which the decedent held property would work a possible fraud upon creditors. It was thereby decided to restrict the permissible source jurisdictions to one, *i. e.,* to the decedent's domicile at the time of his death.

We have canvassed the opinions of the other jurisdictions on this issue and find that although the outcome is generally said to depend upon the particular wording of the relevant statute, in jurisdictions, such as ours, with legislation containing no mention of the domicile of the surviving spouse, the vast majority of our sister states have refused to judicially inject a residency re-

quirement. *Lucky v. Roberts,* 211 Ala. 578, 100 So. 878 (1924); *Duffy v. Harris,* 65 Ark. 251, 45 S.W. 545 (1898); *In re Foreman's Estate,* 16 Cal.App.2d 96, 60 P.2d 310 (1936); *Moorefield v. Byrne,* 140 So.2d 876 (Fla.App. 1962); *Caldwell v. Caldwell,* 192 Iowa 1157, 186 N.W. 58 (1922); *International Harvester Co. v. Dyer's Administrator,* 297 Ky. 55, 178 S.W.2d 966 (App.1944); *Barrett v. Heim,* 152 Minn. 147, 188 N.W. 207 (1922); *Estate of Weatherhead,* 73 Ohio Law Abs. 524, 137 N.E.2d 315 (Probate Ct. 1956); *Prater v. Prater,* 87 Tenn. 78, 9 S.W. 361 (1888); *In re Johnson's Estate,* 114 Wash. 61, 194 P. 834 (1921); *Stolldorf v. Stolldorf,* 384 P.2d 969 (Wyo.1963); *Contra, Black v. Singley,* 91 Mich. 50, 51 N.W. 704 (1892); *In re James' Estate,* 38 S.D. 107, 160 N.W. 525 (1916); *Duda v. Beben,* 252 Wis. 295, 31 N.W.2d 603 (1948).

Moreover, this result is not only sustained by the authorities, but is in accord with common sense. Although the circumstances and equities of this case can be viewed as justifying the imposition of a domicile requirement, we agree with the dissent in the Court of Appeals opinion that a significant number of otherwise innocent parties would be needlessly injured by such an interpretation. For example, the fact of nonresidence should not alone be sufficient cause to deprive a surviving spouse of such personal articles as the family Bible and other family heirlooms to which s/he would otherwise be entitled under the § 14–2402 personal property exemption. Nor are we persuaded that children in the custody of a parent who has divorced the decedent and lives in another state should be deprived of the protection otherwise intended for them under the statute.

Finally, we find appellee's reliance on *In re Graham, supra,* to be misplaced. In that case, the decedent and his spouse were residents of Washington when they purchased realty in Arizona. Although they subsequently moved onto the property for a period of two years, upon the passing of the decedent, his survivor instituted probate proceedings in Washington, claiming that both she and her departed husband were residents of that state. When she subse-

quently petitioned in Arizona for the setting aside of the probate homestead, her claim was contested by two secured creditors of the estate and denied. On appeal, the surviving spouse raised for the first time the contention that nonresidents could properly claim the probate homestead. In *Graham,* a three-to-two opinion, we held merely that arguments based upon faulty assignments of error will not be considered on appeal. To extend our decision, at this time, beyond that point is merely an effort to bind us by dictum. *See* Graham, *supra,* (dissenting opinion of Udall, C. J.).

In addition, the *Graham* court relied heavily upon the first edition of *American Jurisprudence* in reaching its conclusion. 26 Am.Jur. *Homestead* § 175 p. 110, as it existed at that time stated:

> The right which the homestead law secures to the surviving spouse and children is for the benefit of residents of the state; it may not be claimed by a nonresident or by the widow of a nonresident. A widow or orphan must be a resident of the state at the time of the decease of the husband or father in order to obtain the benefit of the homestead law.

We note, however, that the position of the encyclopedia has subsequently reversed, and 40 Am.Jur.2d *Homestead* § 168 p. 238 (1968), currently provides: "[r]esidence of the surviving spouse or minor children has been said not to be a prerequisite . . . . But there is authority [to the contrary]."

Moreover, the *Graham* opinion interpreted the statute as it existed in the 1939 Code. That provision mentioned neither the residence of the decedent nor of the surviving spouse. Our current legislation, however, specifically requires the Arizona domicile of the decedent while placing no similar prerequisite upon the survivor. In this regard, as we said in *Beach v. Superior Court of Apache County,* 64 Ariz. 375, 379, 173 P.2d 79, 81 (1946),

> [i]t will be presumed that the legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to

82

give some effect to the amendment. (citation omitted). . . . [I]t is the rule that when a law is amended by adding thereto, all portions of the law are to be given effect, if possible, . . . .

Similarly, as we have previously mentioned, having seen fit to discuss the residence of the decedent, had the legislature intended to additionally require local domicile of the survivor, it would have simply included appropriate language. We find this particularly true in today's highly mobile society, where separate domiciles between spouses are an increasingly evident phenomena.

Finally, we find of significance the rather substantial alterations contained in the new legislation. Although under A.C.A. § 38–902 as construed in *Graham*, the surviving spouse was entitled solely to a probate homestead, this provision no longer exists, having been replaced by a fiscal allowance in lieu of the decedent's homestead and a personal property exemption. This scheme represents an entirely new set of rights granted the survivor and should not be governed by the construction given the previous statute. Moreover, although requiring residency for the old probate homestead appears logical in light of its relationship to concepts of property, no such nexus exists regarding the essentially monetary benefits granted under the new Code, thereby rendering domicile of doubtful importance.

We note that although a factual predicate has been laid by appellees for a possible defense of abandonment * this issue was not directly raised nor briefed in this appeal and we therefore do not consider it proper to address it at this time.

Regarding the family allowance claimed by the appellant under A.R.S. § 14–2403, we need not reach the issue of domicile. The governing legislation allows a "reasonable allowance" in order to protect the survivor during administration of the estate. This matter must of necessity fall within the discretion of the trial court. *See In re Nolan's Estate*, 56 Ariz. 361, 108 P.2d 388 (1940). In the instant dispute, appellant was self-supporting for all but two weeks of her life. At the time of decedent's death, she was receiving income from both a pension and several investments. Under these circumstances, we are unable to hold that, as a matter of law, the trial court abused its discretion in failing to provide appellant with a family allowance.

The judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

---

* *See In re Coon's Estate*, 107 Cal.App.2d 531, 237 P.2d 291 (1951); *Barlow v. Barlow*, 156 Fla. 458, 23 So.2d 723 (1945); *Dickman v. Birkhauser*, 16 Neb. 686, 21 N.W. 396 (1884); *Swift v. Reasonover*, 168 Tenn. 305, 77 S.W.2d 809 (1935); *Hollie v. Taylor*, 189 S.W. 1091 (Tex. Civ.App.1916). *But see contra, Schmeizl v. Schmeizl*, 186 Md. 371, 46 A.2d 619 (1946) (intestate share); *In re Torres' Estate*, 61 Nev. 156, 120 P.2d 816 (1942) (intestate share); *Meyers' Adm'r v. Meyers*, 244 Ky. 248, 50 S.W.2d 81 (1932); *Veillon v. Lafleur's Estate*, 162 La. 214, 110 So. 326 (1926); *Brown v. Brown*, 104 Ark. 313, 149 S.W. 330 (1912).